SARAH BRODY et al., Appellants, *v.* VINCENZA PECORARO et al., Respondents.

MAX KIMIATEK, Appellant, *v.* VINCENZA PECORARO et al., Respondents.

MAX WARKOW, Appellant, *v.* VINCENZA PECORARO et al., Respondents.

ARTHUR BERGER, Appellant, *v.* VINCENZA PECORARO et al., Respondents.

(Argued November 22, 1928; decided December 31, 1928.)

*William H. Hamilton* and *Norman C. Conklin* for appellants. There is no evidence of any consideration for the transfer other than the oral testimony of the defendants, and the maxim " false in one thing false in everything " should be applied to all their testimony. (*N. Y. & Brooklyn Ferry Co.* v. *Moore,* 32 Hun, 29; 18 Abb. [N. C.] 120; 102 N. Y. 667.) Mrs. Pecoraro intended to hinder, delay or defraud her creditors, and she has accomplished those objects. (*Hennequin* v. *Naylor,* 24 N. Y. 141; *Shand* v. *Hanley,* 71 N. Y. 322.) Where the proof shows a fraud has been perpetrated upon creditors, the burden of evidence is shifted upon one who claims to be an innocent purchaser to show that he acquired the property without any knowledge or notice that would put him upon inquiry; and for a full and adequate consideration. D'Aquila has failed to sus-

tain such burden. (*Canajoharie Nat. Bank* v. *Diefendorf*, 123 N. Y. 191; *Kerker* v. *Levy*, 206 N. Y. 109; *Frank* v. *Von Bayer*, 205 App. Div. 300; 236 N. Y. 475; *GaNun* v. *Palmer*, 216 N. Y. 611; *Carstairs* v. *Spear*, 201 App. Div. 420; *Meyer* v. *Mayo*, 196 App. Div. 82; *Fox* v. *Moyer*, 54 N. Y. 131; *N. Y. & B. Ferry Co.* v. *Moore*, 18 Abb. [N. C.] 106; 102 N. Y. 667; *Smith* v. *White*, 2 N. Y. Supp. 857.)

*Pascal J. Fortinash* for Vincenza Pecoraro, respondent. A purchaser of land for a valuable consideration is entitled to be protected in his title, and in the absence of actual notice of fraud it is necessary, in order to defeat his claim to be a *bona fide* purchaser, that the facts and circumstances relied upon to charge him with knowledge of the fraud should be of a character equivalent to notice. (*Anderson* v. *Blood*, 152 N. Y. 285; *Jacobs* v. *Morrison*, 136 N. Y. 101; *Bush* v. *Roberts*, 111 N. Y. 278; *Stearns* v. *Gage*, 79 N. Y. 102; *Truesdale* v. *Sarles*, 104 N. Y. 164; *Greenough* v. *Greenough*, 32 App. Div. 631; *Zoller* v. *Riley*, 100 N. Y. 102; *Parker* v. *Connor*, 93 N. Y. 118; *Sargent* v. *Jacobs*, 103 N. Y. 125; *Gilmour* v. *Colcord*, 96 App. Div. 358; 183 N. Y. 342; *Byongiermo* v. *Schiller*, 112 App. Div. 916; *Lehrenkrauss* v. *Bonnell*, 119 N. Y. 240.) The record is absolutely barren of any proof that Mrs. Pecoraro perpetrated a fraud upon her creditors. (*Bliss Co.* v. *Progressive Smelting & Metal Corp.*, 208 App. Div. 346; *Schultz* v. *Hoagland*, 85 N. Y. 464; *Constant* v. *University of Rochester*, 133 N. Y. 640; *Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90; *Shotwell* v. *Dixon*, 163 N. Y. 43; *Cowee* v. *Cornell*, 75 N. Y. 99; *Roberts* v. *Buckley*, 145 N. Y. 215; *Jewett* v. *Bowman*, 29 N. J. Eq. 174; *Kellogg* v. *Slawson*, 11 N. Y. 302; *Crook* v. *Rinskopf*, 105 N. Y. 476.)

*Gordon S. P. Kleeberg, Jacob Greenwald* and *Jacob Kaplan* for Frank D'Aquila, respondent. Whether Mrs. Pecoraro intended to and did hinder, delay or defraud

her creditors is immaterial unless notice thereof was brought home to the defendant D'Aquila as to which there is no evidence. (*Anderson* v. *Blood*, 152 N. Y. 285; *Jacobs* v. *Morrison*, 136 N. Y. 101; *Bush* v. *Roberts*, 111 N. Y. 278; *Stearns* v. *Gage*, 79 N. Y. 102; *Parker* v. *Connor*, 93 N. Y. 118; *Zoller* v. *Riley*, 100 N. Y. 102; *Sargent* v. *Jacobs*, 103 N. Y. 125; *Peetsh* v. *Sommers*, 31 App. Div. 255; *Byongiermo* v. *Schiller*, 112 App. Div. 916; *Lehrenkrauss* v. *Bonnell*, 119 N. Y. 240; *Bliss Co.* v. *Progressive Smelting & Metal Corp.*, 208 App. Div. 346; *Schultz* v. *Hoagland*, 85 N. Y. 464; *Constant* v. *University of Rochester*, 133 N. Y. 640; *Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90; *Shotwell* v. *Dixon*, 163 N. Y. 43; *Klein* v. *Gallin*, 141 N. Y. Supp. 831; 164 App. Div. 958; *Jaeger* v. *Kelly*, 52 N. Y. 276; *Marsh* v. *Fuller*, 40 N. Y. 566; *Bernheimer* v. *Rinskopf*, 116 N. Y. 436.)

CARDOZO, Ch. J.   Plaintiffs are suing to set aside a conveyance of real property as made in fraud of creditors.

On January 29, 1925, Vincenza Pecoraro, the judgment debtor, made a deed of the house and lot 1122 First avenue in the city of New York.  The grantee was Frank D'Aquila, who claims to have taken the property as a purchaser for value.  At the time of the conveyance the grantor was insolvent, and harassed by her creditors Some of them, holding claims for upwards of $6,000, had charged her with fraudulently disposing of a stock of merchandise, and, suing for their debts, had levied an attachment by reason of that fraud on the very property in question.  Others, less diligent, were already uneasy and importunate.

In this predicament, the deed was made.  Witnesses for the plaintiffs fix the value of the land as between $34,000 and $39,000.  The consideration, real or pretended, was $20,000, of which $7,250 was the amount of an existing mortgage.  The grantor admits that the

property was worth more. She says that she sacrificed it because her creditors were pressing her, and that money was needed in a hurry to pay a favored few. The trouble with this explanation is that with one or two exceptions the few thus marked for favor were not creditors at all. On her own showing, the proceeds of the sale, if it be assumed that any were received, were used for her own benefit or for that of persons not creditors, and the deed was made for the very purpose of enabling her thus to use them. The total sum to be accounted for was $12,750. Of this, the largest item, $5,200, was for a vault at Calvary Cemetery, the burial place of her husband, who had died two years before. She produced a receipted bill of a manufacturer of monuments showing the payment of that amount on January 31, 1925, two days after the conveyance, for a vault " to be erected." Argument is unnecessary to show that she could not lawfully divert this money from her creditors in order to obtain the benefit of a new executory contract. The item must be rejected unless otherwise explained. The sum of $1,118 was paid to some one who had loaned money to her husband. This was his debt, not hers. The property in suit was no part of his estate; she had bought it in 1921, two years before his death. The sum of $1,947 was paid to an undertaker for the husband's funeral, but of this, $1,000 had been paid shortly after his death, so that only $947 could have been supplied from the proceeds of the sale. She paid $1,500 for work said to have been done in repairing wagons for the business, and $2,000 to a son-in-law for loans of small amounts received from him from time to time. These are the only items included in her statement. The total payments enumerated were $10,765, of which only $4,447, if we assume them to be genuine, were payments to her creditors. Out of a fund of $12,750, $6,318 was paid to persons not creditors at all, and for $2,005 more she offers no accounting whatever, contenting herself with

the admission that she used it for herself. This analysis shatters the pretense that the precipitate sale at a ruinous sacrifice was made in aid of creditors. The grantor was not thinking of aid in that direction. If we accept her testimony as true, about two-thirds of the proceeds were immediately withdrawn from her creditors and applied to other uses.

We have assumed up to this point that a consideration was in truth received. The tale as to the manner of its payment is a strain upon credulity. The story is that the price above the mortgage, i. e., $12,750, was paid by the grantee in bills, $500 at the signing of the contract, and the rest at the conveyance. He got the money, he says, from his mother, who had it somewhere in their apartment, where it had been kept in a bed or other hiding place. It did not come out of a bank account, though he had one at the time. The mother was not a witness to corroborate his narrative. When the closing day arrived, the property was found to be subject to the lien of an attachment. He took title without request for indemnity, though the result was to increase by about $6,000 the payment to be made. The contract called for an adjustment of rents, taxes and insurance, yet none was made or even asked for. The traditional badges of fraud are spread over the transaction in prodigal profusion.

We think the fraud of the grantor has been made out by evidence that allows no other inference (*Bulger* v. *Rosa*, 119 N. Y. 459, 464; *Ga Nun* v. *Palmer*, 216 N. Y. 603, 611, 612). If she received anything for the conveyance, she used it for herself. The use was not an afterthought. It was the end and aim of the transaction. This was to hinder creditors, and defraud them of their dues. The finding that the conveyance was made without fraudulent intent on the part of the grantor must be held to be erroneous and without basis in the proofs.

If the grantor made the conveyance with fraudulent

intent, the burden was on the grantee to show that he had accepted it for value, in which event the plaintiffs might have had to prove that he had notice of the fraud (*Frank* v. *Van Bayer*, 236 N. Y. 473, 475; *Greenwald* v. *Wales*, 174 N. Y. 140, 144; Real Prop. Law [Cons. Laws, ch. 50], § 266; Pers. Prop. Law [Cons. Laws, ch. 41], §§ 35, 40; cf. *Seymour* v. *McKinstry*, 106 N. Y. 230). There is a finding by the trial judge that the conveyance was not made without consideration and was not accepted by the grantee with intent to hinder or delay. Very probably, however, the finding was dictated by the erroneous belief that there was no such intent on the part of the grantor. The inevitable result of such an error was a misconception of the burden of proof that was cast on the grantee (*Title Guarantee & Trust Co.* v. *Pam*, 232 N. Y. 441, 453). Without such misconception we may doubt whether the narrative of payment would have been thought to be invested with the quality of truth. The tale of a large amount of money brought forth from a hiding place by a complaisant mother who is not offered as a witness, might then have been rejected as fantastic. The meek acceptance by the grantee of an added lien for $6,000 might have seemed unnatural if he was in truth a buyer, but natural for a man of straw. We are not required to say that the evidence of payment was so confused and incredible that rejection became necessary as a matter of law. At least it was so doubtful as to exact a consideration of its merits with recognition of the differing burdens that are appropriate to assault and to defense. True indeed it is that when the lien of the attachment was later merged in a judgment, it was paid by the grantee, but evidence is lacking as to how the money was procured. Value at any stage will be unavailing in and of itself to keep an enterprise afloat if it is weighted down at the beginning by a concurring purpose to defraud (*Baldwin* v. *Short*, 125 N. Y. 553). The probe of a new trial may be trusted to disclose the truth.

In each action, the judgment of the Appellate Division and that of the Special Term should be reversed, and a new trial granted, with costs to abide the event.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgments reversed, etc.