BENNETT v. GLEISCH.

SAME v. DIETZ.

SAME v. WITTER HOMES, Inc.

Nos. 5294, 5306, 5295.

District Court, E. D. New York.

Sept. 14, 1932.

David Haar, of New York City, for plaintiff.

Walter B. Milkman, of Brooklyn, N. Y., for defendants.

CAMPBELL, District Judge.

On stipulation the three above-entitled actions were tried together, and as they have many issues of fact that are common to all, and the legal principles underlying the different causes of action are substantially the same, one opinion will suffice.

Froh Homes, Inc., the bankrupt, was a close corporation. It was organized in April, 1926, and the incorporators were Ferdinand Frohwitter, the father, Gertrude Frohwitter, his wife, and Harold Frohwitter, the son. The capital was to be $5,000, divided into 50 shares.

Witter Homes, Inc., was organized on November 17, 1927, certificate filed December 2, 1927; its incorporators being Gertrude

Frohwitter, her son Harold Frohwitter, and Frank Alexander, a brother of Gertrude Frohwitter.

The first above-described corporation has for its name the first syllable of the family name, "Froh." The second above-described corporation has for its name the second syllable of the family name, "Witter." Ferdinand Frohwitter, the father, was influential in forming both corporations because, although he was not an incorporator of Witter Homes, Inc., his name is appended as a witness and he took the acknowledgment on the certificate of incorporation. The certificates of incorporation of the two corporations are identical in language, save for the difference in the name of the corporation, and the difference in the names of the incorporators.

Harold Frohwitter was the president of both corporations, Frank Alexander was the secretary of both corporations, and Gertrude Frohwitter, the mother, was the vice president and treasurer of both corporations. These corporations occupied the same offices, had the same telephone and the same stenographer. Their stationery bore the names of both corporations, and they are both engaged in the business of building.

Between the date of its organization and May, 1928, Witter Homes, Inc., acquired title to a triangular plot of land in Queens Village, bounded on the north by Ninety-Second avenue, on the south by Ninety-Third avenue, on the east by Vanderveer street, and on the west by 214th place, from Joseph H. Gleisch. Gleisch had previously acquired the property from Froh Homes, Inc. Gleisch paid nothing to Froh Homes, Inc., for the property, and Witter Homes, Inc., paid nothing to Gleisch for the same property. This was the only development of Witter Homes, Inc.

In May, 1928, Froh Homes, Inc., was completely out of the Queens Village development, and in the same month Froh Homes, Inc., undertook the Middle Village development.

Harold Frohwitter testified that he did not believe that Froh Homes, Inc., had any money when it bought the Middle Village property, and that it did not have any other property.

The purchase price of the Middle Village parcel was $54,000, of which Froh Homes, Inc., paid $5,000 in cash, and the balance of $49,000 they owed on mortgage. $2,500 of the $5,000 cash payment on the purchase price was borrowed by Froh Homes, Inc., from Witter Homes, Inc. The remaining $2,500 was borrowed, but there is a dispute as to whether it was borrowed from Ferdinand Frohwitter, the father, or the building loan.

In May, 1928, Froh Homes, Inc., had no money of its own and no property, and it then acquired the Middle Village property at a cost of $54,000, of which $5,000 was borrowed and $49,000 remained on mortgage.

Harold Frohwitter testified that the property when acquired was worth $70,000. This does not seem to be a fact in view of the testimony of his father, Ferdinand Frohwitter, that this particular parcel of land was worth $70,000 in October of that year after it had been developed, graded, and improved. That the testimony of Harold Frohwitter as to the value of this land when purchased is not worthy of serious consideration is apparent when you read the financial statement made by him to the Jamaica Bank, dated July 9, 1928, in which he put the cost of the Middle Village parcel as $90,000, almost double its cost.

At and before the time that Froh Homes, Inc., acquired the Middle Village parcel, it owed other debts which it could not pay, to wit: $18,755.77 to Ferdinand Frohwitter, $3,000 to Joseph H. Gleisch, and was indebted to contractors on previous work in the sum of $7,591.92. This made the total of all the debts of Froh Homes, Inc., including the purchase price, $83,346, and this was exclusive of the first mortgage on said premises which was for a considerable sum.

The Middle Village parcel was the only asset of Froh Homes, Inc.

Froh Homes, Inc., bought the Middle Village parcel for development, that is, it was planning to erect thereon 35 one-family buildings, and depended for its finances upon a building loan that had been arranged with State Title & Mortgage Company in the sum of $171,750.

The first advance was in the sum of $22,500 made on September 5, 1928. Other advances were made on the building loan from time to time until a total of $115,614.35 net had been advanced.

Joy-Simpson, the excavator, was the first contractor on the job. Froh Homes, Inc., paid that contractor $1,500 on September 7, 1928, two days after the receipt of the first advance on the building loan, and still owes that contractor $2,879 from September 7, 1928.

A check issued by Froh Homes, Inc., to a creditor as a first payment in July, 1928,

came back unpaid. Five checks issued by Froh Homes, Inc., came back in August, six in September, ten in October, nine in November, and fifteen in December.

The bank account of Froh Homes, Inc., in the Jamaica National Bank was closed out on January 8, 1929, and the bank account in Mechanics' Bank opened December 1, 1928, was closed out on February 13, 1929.

Froh Homes, Inc., called a meeting of its creditors in the latter part of February, 1929, and in March, 1929, it transferred all of its property by deed of trust to Paul Wicksman, as trustee.

Froh Homes, Inc., offered a settlement of 25 per cent. to its creditors on March 22, 1928, and it then owed over $90,000 to contractors only.

A petition in bankruptcy was filed against Froh Homes, Inc., on June 26, 1929, and on September 7, 1929, after a contest it was adjudicated a bankrupt. The scheduled debts exceed $100,000 in amount. The proved claims amount approximately to $26,000. No assets came into the possession of the trustee.

From all the testimony it is apparent that Froh Homes, Inc., was insolvent from May, 1928, right up to the time of the filing of the petition in bankruptcy herein, as "insolvency" is defined by the Debtor and Creditor Laws of the State of New York, chapter 17 of the Laws of 1909, as amended by chapter 254 of the Laws of 1925, constituting chapter 12 of the Consolidated Laws, so much of which as is necessary for consideration herein reads as follows:

"§ 271. Insolvency. 1. A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured. * * * "

These facts are common to all the cases.

These are not actions brought under section 67e (11 USCA § 107 (e), but under 70e of the National Bankruptcy Act, now title 11, section 110 (e), United States Code (11 USCA § 110 (e), which gives to the trustee the right to bring any action which a creditor could have brought under the state law, and reads as follows: "e. The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication."

I will first consider the case against Witter Homes, Inc.

There are two causes of action alleged in the complaint in this action. The first is to recover $27,344.79, moneys alleged to have been paid by the bankrupt to or on account of Witter Homes, Inc., "with intent to hinder, delay or defraud the creditors of the bankrupt." The second is to recover $12,190, which it is alleged the bankrupt on October 17, 1928, while insolvent paid to Witter Homes, Inc., in cash with intent to hinder, delay, and defraud the bankrupt's creditors.

The facts hereinbefore recited having been found, it was shown that between June 6, 1928, and December 4, 1928, Froh Homes, Inc., received from Witter Homes, Inc., $17,861.71, to which should be added the $2,500 borrowed in May, 1928, to pay on the land contract, making $20,361.71 in all.

During the same period of time there was paid by Froh Homes, Inc., with its own money, to contractors of Witter Homes, Inc., for account of Witter Homes, Inc., for work done for Witter Homes, Inc., the sum of $23,916.50.

In addition to that sum, there was paid by Froh Homes, Inc., direct to Witter Homes, Inc., the sum of $23,790, making in all the sum of $47,706.50, from which should be deducted the amount received by Froh Homes, Inc., to wit, $20,361.71, leaving a difference of $27,344.79, which is the amount paid by Froh Homes, Inc., to Witter Homes, Inc., or for the account of Witter Homes, Inc., over and above the amount received from Witter Homes, Inc., and the amount alleged in the first cause of action of the complaint.

Defendants contend that there was due from Froh Homes, Inc., to Witter Homes, Inc., an amount greatly in excess of the payments made by Froh Homes, Inc., to Witter Homes, Inc., and to contractors on account of debts due from Witter Homes, Inc., to them, and that the payments made by Froh Homes, Inc., to and for account of Witter Homes, Inc., were in reality payments to Witter Homes, Inc., on account of an antecedent debt from Froh Homes, Inc., to Witter Homes, Inc.

To sustain this contention the defendants depend on the testimony of Harold Frohwitter, which on this branch of the case is so erroneous and contradictory that I consider it unworthy of belief.

Defendants also question the account made by the trustee's accountant, Fink, especially his allocation of the checks upon which appeared the word "Witter" or the letter "W"; but I am convinced on all the evidence that he was right and I accept his account as correct.

The amount of $27,344.79 found due from Witter Homes, Inc., to Froh Homes, Inc., is made up of $23,916.50 used to pay the debts of Witter Homes, Inc., and $3,428.29, the amount of cash paid by Froh Homes, Inc., to Witter Homes, Inc., over and above the amount of cash paid by Witter Homes, Inc., to Froh Homes, Inc.

■ As to the amount of $23,916.50 paid by Froh Homes, Inc., to or for Witter Homes, Inc., without consideration and while Froh Homes, Inc., was insolvent, it is fraudulent as to creditors under section 273 of the Debtor and Creditor Law of the State of New York, chapter 17 of the Laws of 1909, as amended by chapter 254, of the Laws of 1925, constituting chapter 12 of the Consolidated Laws, which reads as follows:

"§ 273. Conveyances by insolvent. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

"§ 270. Definition of terms. * * * 'Conveyance' includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance."

"§ 272. Fair consideration. Fair consideration is given for property, or obligation,

"a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

"b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

See Marcus v. Kane (C. C. A.) 18 F.(2d) 722.

The evidence is not convincing as to the intent with reference to the overpayment of $3,428.29, and that will be eliminated.

As to the second cause of action:

$12,190 was paid on October 17, 1928, by Froh Homes, Inc., to Witter Homes, Inc., in repayment of a loan alleged to have been made by Witter Homes, Inc., to Froh Homes, Inc., on July 12, 1928.

The fact is that Witter Homes, Inc., did advance and pay to Froh Homes, Inc., on July 12, 1928, not $12,190, but only $7,500 to pay off a loan to Jamaica National Bank, and on the statement of the defendant Witter Homes, Inc., there is a balance due Froh Homes, Inc., of $3,800 on that transaction.

■ On October 17, 1928, when the $12,190 was repaid to Witter Homes, Inc., the bankrupt Froh Homes, Inc., was insolvent under the state law, and knowledge of that fact on the part of Witter Homes, Inc., was shown, as Harold Frohwitter was the president of both companies and the payment was a repayment of an antecedent debt. The payment was intended to be a preference, and this is clearly shown by the fact that Harold Frohwitter knew of the indebtedness of Froh Homes, Inc., and its inability to pay such debts, and while contract creditors were receiving only payments on account and the first creditor of the building operation, the excavator, had not received even one-half of his claim, Witter Homes, Inc., was paid in full.

The payment was invalid as a preference by the terms of section 15 of the Stock Corporation Law of the State of New York, chapter 787 of the Laws of 1923, constituting chapter 59 of the Consolidated Laws, so much of which as is necessary for consideration reads as follows:

"§ 15. Prohibited transfers to officers or stockholders. * * * No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. * * * Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders or other trustees. * * * "

The plaintiff is entitled to a decree against the defendant Witter Homes, Inc., as prayed for in the complaint herein, but in the following amounts with interest, for the sum of $23,916.50 with interest thereon

from December 4, 1928, on the first cause of action, and for the sum of $12,190 with interest thereon from October 17, 1928, together with the costs of this action.

We will next consider the case against Joseph H. Gleisch.

Four causes of action are alleged in the complaint.

The first is to recover the sum of $1,600 in cash as a fraudulent transfer.

The second is to recover the Dietz mortgage of $5,500 as a fraudulent transfer.

The third is to recover the McHugh mortgage of $3,500 as a fraudulent transfer.

The fourth cause of action pleads all these allegations as a preference under the Stock Corporation Law of the State of New York.

The defendant Gleisch is a retired merchant and had known the Frohwitters, father and son, for twenty-five years. He had loaned moneys to Froh Homes, Inc., the bankrupt, from time to time. He had no regular office for the conduct of any business unless the office of the above-named bankrupt was also his office, but his name appears on the stationery used by the Frohwitters for their various corporations, and he knew that his name appeared on the stationery of Froh Homes, Inc., and never objected.

The insolvency of Froh Homes, Inc., during September and October, 1928, has been hereinbefore found and requires no further consideration.

The existence of one or more creditors of Froh Homes, Inc., at the time of the transfers to the defendant Gleisch, which are herein attacked, who were creditors at the time of the bankruptcy, has also been shown. As to the first cause of action, the evidence shows that on September 27, 1928, the bankrupt Froh Homes, Inc., gave its checks to the defendant Gleisch for $100 and $500, respectively, and the defendant Gleisch thereupon, at the same time, gave his check for $600 to Harold Frohwitter, the president of Froh Homes, Inc., the bankrupt.

On October 10, 1928, the bankrupt Froh Homes, Inc., gave its check to the defendant Gleisch for $1,000, and the defendant Gleisch thereupon, at the same time, gave two of his checks for $500 each to Harold Frohwitter, the president of the bankrupt Froh Homes, Inc.

The evidence convinces me that this was a method used by the Frohwitters, father and son, to becloud the record as to withdrawals for their own benefit from the funds of Froh Homes, Inc., and that Gleisch was used by them for that purpose. I saw and heard the Frohwitters, father and son, and the defendant Gleisch, all of whom took the stand as witnesses on the trial. I am convinced that the defendant Gleisch was not knowingly a party to that scheme. None of the checks of Gleisch hereinbefore described were drawn to the order of Ferdinand Frohwitter, the father, but all were drawn to the order of Harold Frohwitter, the son, who was the president of Froh Homes, Inc., and the defendant Gleisch undoubtedly accepted Harold Frohwitter's explanation of the necessity of having checks he could cash at once to pay current expenses of Froh Homes, Inc.

No benefit came to the defendant Gleisch from these transactions, as he gave $1,600 of his own money for the $1,600 he received from Froh Homes, Inc., and as to him they represented only an exchange of checks. The explanation of the defendant Gleisch of these transactions I accept as true, so far as he is concerned.

The testimony of Harold Frohwitter, the president of the bankrupt, was erroneous in too many particulars to have any probative force, but I see no reason for penalizing the defendant Gleisch as to these transactions by reason thereof.

The first cause of action must be dismissed.

The second cause of action presents an entirely different situation.

On October 23, 1928, Froh Homes, Inc., which was then insolvent, assigned to the defendant Gleisch a bond and mortgage of the value of $5,500 made by Agnes Dietz and of which Froh Homes, Inc., was the owner.

After considering the conflicting testimony of Harold Frohwitter, the president of Froh Homes, Inc., the bankrupt, and the defendant Gleisch, I am convinced that this assignment of mortgage was made by the bankrupt with the intent to prefer the defendant Gleisch as to a previously existing debt, and that it was taken by the defendant Gleisch with knowledge of that intent.

From their testimony it is hard to determine exactly what was paid for the mortgage and when the payments were made, but it is certain that the only payments which could by the most favorable consideration for the defendant Gleisch of the evidence be found to be a present consideration for said assignment of mortgage, are the payment by check for $1,000 delivered by the defendant Gleisch to Harold Frohwitter on October 22,

1928, and the check for $1,150 delivered by the defendant Gleisch to Froh Homes, Inc., the bankrupt on October 24, 1928, amounting in the aggregate to $2,150, and that as to the balance of $3,350 it was for a pre-existing debt and constituted a preference under section 15 of the Stock Corporation Law, supra, and that as to that sum with interest the plaintiff is entitled to recover against the defendant Gleisch.

The third cause of action relates to the assignment of the McHugh mortgage.

At the time of the assignment of this mortgage, Froh Homes, Inc., the bankrupt, was insolvent. On October 30, 1928, Froh Homes, Inc., the bankrupt, assigned to the defendant Gleisch a bond and mortgage of the value of $3,500 made by John E. McHugh, which was owned by the bankrupt. In payment for this mortgage the defendant Gleisch, on the same day, gave two checks, one for $1,500 to H. F. Frohwitter, the president of Froh Homes, Inc., and the other for $2,000 to F. H. Frohwitter, the father. The defendant Gleisch knew that the bankrupt was a corporation and that the checks were not made payable to it. This again was a payment to the Frohwitters, father and son, of money belonging to the corporation when it was insolvent, and Harold Frohwitter, the son, was the president of the bankrupt.

While the testimony of Harold Frohwitter is so erroneous in many particulars that it has little probative force, I believe that at least $1,300 of the $1,500 which was paid by check to him was deposited to the credit of the bankrupt, and that the remaining $200 was used for the bankrupt's benefit, but Froh Homes, Inc., the bankrupt, did not receive the benefit of the $2,000 paid by the defendant Gleisch by check to F. H. Frohwitter.

Good faith was not shown as to the $2,000 payment either by the assignor or the defendant Gleisch, and to that extent the assignment was a fraudulent transfer within the state statute against fraudulent conveyances. By his acts the defendant Gleisch put it in the power of the bankrupt Froh Homes, Inc., to diminish the estate to the extent of $2,000 of the value of that mortgage, and he must answer for it. Brody v. Pecoraro, 250 N. Y. 56, 164 N. E. 741; Marcus v. Kane (C. C. A.) 18 F.(2d) 722.

The plaintiff is entitled to a decree against the defendant Gleisch for the sum of $3,350, to which extent the assignment of the Dietz mortgage was preferential, with interest thereon from October 23, 1928, and for the sum of $2,000, to which extent the assignment of the McHugh mortgage hindered, delayed, and defrauded the creditors of the bankrupt, with interest thereon from October 30, 1928, with costs, and the defendant Gleisch is entitled to a dismissal of the first cause of action without costs.

We now come to a consideration of the case against Ida Dietz.

The defendant Ida Dietz is an aunt of Harold Frohwitter, the president of the bankrupt, a sister-in-law of Ferdinand Frohwitter, and a sister of Frank Alexander, the secretary of the bankrupt.

At the request of Harold Frohwitter, the defendant Ida Dietz made two loans to Witter Homes, Inc., which immediately loaned the money so received to Froh Homes, Inc., to wit, $2,000, on August 16, 1928, and $3,000 on September 26, 1928. The first loan was repaid to the defendant Dietz on September 6, 1928, $1,800 by Froh Homes, Inc., and $200 by Ferdinand Frohwitter.

It was subsequent to the payment of the first loan that the second loan of $3,000 was made.

In no event can there be a recovery of more than $3,000, as the amount that was repaid to the defendant Dietz, on September 6, 1928, was $2,000, and she subsequently made a loan of $3,000, which was $1,000 greater than the amount she had received.

Froh Homes, Inc., was insolvent in August, September, and October, 1928, and there were creditors in September and October, 1928, who remained creditors at the time the petition in bankruptcy was filed.

I am not unmindful of the relationship of the defendant Dietz to the Frohwitters, and it is certain that the financial condition of the bankrupt by the latter part of October was such that the officers of Froh Homes, Inc., and the directors as well, especially Harold Frohwitter, must have known that the payment of the claim of the defendant Dietz in full would give her a preference and must have so intended.

Knowledge on the part of the defendant Dietz was not necessary, as the amendment of section 15 of the Stock Corporation Law of New York in 1929 (Laws 1929, c. 653), which requires proof of such knowledge, is not retroactive. Matters v. Manufacturers' Trust Company (C. C. A.) 54 F.(2d) 1010, 1016. This decision overruled that of Judge Hazel in Miceli v. Morgano (D. C.) 36 F.(2d) 507.

The loan of September 26, 1928, was paid off in two payments, one of $1,000 on October 26, 1928, and one of $2,000.

█ It is true that operations were being continued and payments were being made to creditors during October, but no creditors were being paid in full except those related to the Frohwitter family or closely associated with them, and while the payment of $1,000 made on October 26, 1928, may be considered as made in due course of business, the payment in full of $2,000 on October 30, 1928, was clearly a preference under the Stock Corporation Law of the State of New York, section 15, supra, and so intended by the bankrupt.

The plaintiff is entitled to a decree against the defendant Ida Dietz for $2,000 with interest thereon from October 30, 1928, and with costs.

Decrees in the three above-entitled actions are directed in accordance with this opinion.

Settle on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court, as provided by the rules of this court.