**CROWTHERS McCALL PATTERN, INC., Debtor-in-Possession, Plaintiff,**

v.

**Reginald F. LEWIS, Shearson Lehman/American Express, Inc., Shearson Lehman Brothers Group Inc., Shearson TLC, Shearson Lehman Brothers Holdings, Inc., Shearson Lehman Brothers International, Inc., Shearson Lehman Brothers Capital Partners I, Shearson Lehman Brothers Inc., Bankers Trust Company, Earle K. Angstadt, Jr., Samuel P. Peabody, Richard J. Olivarez, Jean S. Fugett, Robert C. Dejongh, Sanford Cloud, Jr., Marilda G. Alfonso, Lee A. Archer, Jr., and James E. Obi, Defendants.**

No. 89 Civ. 5971(MEL).

United States District Court, S.D. New York.

July 3, 1991.

See also 114 B.R. 407.

Rosenman & Colin, New York City (Robert W. Gottlieb, Arthur S. Linker, Sandy A. Wald, Carole R. Bernstein, of counsel), for plaintiff.

Willkie Farr & Gallagher, New York City (Joseph T. Baio, Douglas Young Peters, George B. Schwab, of counsel), for defendants Shearson Lehman/American Exp. Inc., Shearson Lehman Bros. Group Inc., Shearson TLC Inc., Shearson Lehman Bros. Holdings, Inc., Shearson Lehman Bros. Intern., Inc., Shearson Lehman Bros. Capital Partners I and Shearson Lehman Bros. Inc.

Moses & Singer, New York City (David B. Eizenman, David B. Picker, Moses & Singer, Jack H. Weiner, Bankers Trust Co., of counsel), for Defendant Bankers Trust Co.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Mark H. Alcott, Stuart M. Cobert, Melissa T. Rosse, Antony J. Blinken, Adam Mitzner, Nancy L. Bertolino, of counsel), for individual defendants.

LASKER, District Judge.

This case concerns the rights of creditors of a corporation to seek compensation from

participants in the sale of the corporation when the debt assumed by that corporation as a result of the sale renders it unable to meet its financial obligations. Certain defendants move to dismiss the complaint as to them.

TLC Pattern, Inc. ("TLC Pattern") was a designer and manufacturer of home sewing patterns, doing business under the name of The McCall Pattern Company. The majority stockholder of TLC Pattern was TLC Group, Inc. ("TLC Group") whose stock was held by defendant Reginald Lewis. The rest of the stock of TLC Pattern was owned by defendants Angstadt, Peabody and Olivarez, and by Robert Hermann.

In 1987, TLC Pattern was sold at auction to John Crowther Group, plc ("Crowther Group"), a British company in the textile business. Crowther Group acquired TLC Pattern through a corporate entity created for that purpose named GJS One Acquisition, Inc. ("GJS One"). The majority stockholder of GJS One was a subsidiary of Crowther Group, Crowthers Overseas Holdings, N.V. ("Crowthers Holdings"). The other stockholders were defendant Shearson TLC, Inc. ("Shearson TLC"), an affiliate of Shearson Lehman/American Express, Inc., and defendant Lewis.

GJS One paid $63 million in cash for the stock of TLC Group and TLC Pattern. $30.5 million was provided as equity by the stockholders ($29 million from Crowthers Holdings, $900,000 from defendant Shearson TLC, and $600,000 from defendant Lewis). The other $35 million was borrowed ($20 million from defendant Shearson Lehman Brothers Holdings, Inc. ("Shearson Holdings") and $15 million from defendant Bankers Trust Company).

After the 1987 sale, TLC Group and TLC Pattern were merged into GJS One. The surviving corporation then changed its name to Crowthers McCall Pattern, Inc. ("Crowthers Pattern"), the plaintiff in this action.[1]

Crowthers Pattern issued $35 million in senior notes to Travelers Insurance Company and Travelers Indemnity Company (collectively "Travelers") and Travelers repaid the loans of Shearson Holdings and Bankers Trust Company referred to above. In late 1988 Crowthers Pattern was unable to make a principal payment on its debt to Travelers. On December 9, 1988, Crowthers Pattern filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

In September 1989, the Creditors' Committee filed this action on behalf of and in the name of Crowthers Pattern. The complaint alleges that: 1) the 1987 sale to GJS One was a fraudulent conveyance (Counts I–IV); 2) the individual defendants breached their fiduciary duty as directors of TLC Pattern by approving the 1987 sale (Count V); 3) the 1987 sale and certain payments made by TLC Pattern violated the Delaware General Corporation Law (Count VI); 4) certain distributions in connection with the 1987 sale and certain other dividends and payments violated provisions of an Indenture to which TLC Pattern was a party (Count VII); 5) Lewis breached the terms of two agreements to which TLC Pattern was a party; and 6) Lewis dominated and controlled TLC Pattern and Crowthers Pattern and therefore is liable for all of their debts. (Count X)

Bankers Trust and four of the Shearson entities move to dismiss Counts I through III and Bankers Trust and all of the Shearson entities move to dismiss Counts IV and V. The individual defendants move to dismiss Counts VI, VII and X. All of the defendants move to compel Crowthers Pattern to join Travelers, Crowthers Holdings and Robert Hermann as defendants under Rule 19 of the Federal Rules of Civil Procedure, or in the alternative, to dismiss the complaint.

## I. Motions to Dismiss Counts I–IV

Counts I through III allege claims against all defendants under the "constructive intent" to defraud provisions of the

---

1. The sale and subsequent merger are referred to collectively as the "Crowthers LBO." LBO stands for "leveraged buy out."

New York fraudulent conveyance laws. N.Y. Debtor and Creditor Law ("DCL") §§ 273, 274, and 275 (McKinney 1990).[2] Count IV alleges that the conveyances made and the obligations incurred by Crowthers Pattern in connection with the Crowthers LBO were made with actual intent to hinder, delay or defraud creditors in violation of N.Y. Debtor and Creditor Law § 276 (McKinney 1990).[3]

The plaintiff seeks to set aside as fraudulent conveyances transfers made and obligations incurred by Crowthers Pattern and its predecessor TLC Pattern in connection with the 1987 sale of TLC Pattern's stock. The plaintiff asserts that, far from receiving fair consideration, Crowthers Pattern received nothing in return for assuming the liability for the Bankers Trust and Shearson bridge loans and for its repayment of those bridge loans. As a result, according to the plaintiff, Crowthers Pattern was rendered insolvent or left with an unreasonably small capital.

### A. *The Shearson Entities*

Four of the seven Shearson entities (Shearson Lehman/American Express Inc., Shearson Lehman Brothers Group Inc., Shearson TLC Inc. and Shearson Lehman Brothers Capital Partners I) argue that Counts I through IV should be dismissed as to them because the complaint does not plead that they received conveyances from Crowthers Pattern.

■ The complaint does not allege any facts with regard to Shearson Lehman/American Express Inc. and therefore the motion to dismiss as to that entity is granted. The only fact alleged against Shearson Lehman Brothers Group Inc. is that it is the parent company of Shearson TLC and an affiliate of Shearson Lehman Brothers Capital Partners I. A corporation is not ordinarily liable for the acts of its affiliates or subsidiaries unless it dominated or controlled the related corporations. *See Truglia v. KFC Corp.,* 692 F.Supp. 271, 275 (S.D.N.Y.1988), *aff'd,* 875 F.2d 308 (2d Cir.1989). Here, the plaintiff has not alleged facts to suggest that Shearson Lehman Brothers Group Inc. exercised unusual control over Shearson TLC or Shearson Lehman Brothers Capital Partners I. Accordingly, the motion to dismiss Counts I through IV as to Shearson Lehman Brothers Group Inc. is granted.

■ Moreover, even if Shearson Lehman Brothers Group were charged with controlling Shearson TLC and Shearson Lehman Brothers Capital Partners I, the claims against Shearson Lehman Brothers Group would not be viable because the allegations against Shearson TLC and Shearson Lehman Brothers Capital Partners I are not sufficient to survive a motion to dismiss. The only allegation against Shearson TLC in the complaint is that it invested $900,000 in GJS One in exchange for 30% of GJS One's common stock. The only allegation against Shearson Lehman Brothers Capital Partners I is that it acquired 15% of GJS One's stock from Shearson TLC. These allegations alone are not sufficient to establish fraudulent conveyance liability.

Indeed, plaintiff itself lamely admits that it cannot figure out whether any of these

---

**2.** "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration." DCL § 273.

"Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent." DCL § 274.

"Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both his present and future creditors." DCL § 275.

**3.** "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." DCL § 276.

parties is responsible but seeks to keep them in the case to order to make that determination. The Federal Rules do not permit such preemptive tactics.

Accordingly, Counts I through IV are dismissed as to Shearson TLC and Shearson Lehman Brothers Capital Partners I, without prejudice to replead within sixty days of the filing of this opinion if, in good faith, the plaintiff can allege facts which would render those parties liable if proven.

### B. *Bankers Trust*

■ Bankers Trust contends that Counts I through III should be dismissed as to it because the complaint does not allege that it received any property or obligation from Crowthers Pattern or that it holds any property of Crowthers Pattern which could be restored or obligations from Crowthers Pattern which could be annulled.

The plaintiff responds that Bankers Trust received "conveyances" from Crowthers Pattern within the meaning of the statute 1) when, as a result of the Crowthers LBO, Crowthers Pattern assumed liability for the Bankers Trust $15 million bridge loan; and 2) when the proceeds from the $35 million senior notes conveyed to Travelers were used to repay the Bankers Trust bridge loan.

Bankers Trust argues further that Counts I through III are deficient because DCL §§ 273, 274 and 275 mandate that for a conveyance or obligation to be presumed fraudulent, there be an absence of "fair consideration". Bankers Trust contends that repayment of an antecedent debt cannot be a fraudulent conveyance absent the recipient's actual intent to defraud or insider status—neither of which is alleged as to Bankers Trust.

The plaintiff responds that its allegations of lack of fair consideration are adequately supported by factual allegations that a) Crowthers Pattern did not receive a "fair equivalent" for these conveyances in that the proceeds of the bridge loans (the liability for which Crowthers Pattern assumed) went to the selling shareholders and not to Crowthers Pattern; and b) the conveyances were not in good faith in that Bankers Trust knew that the $35 million they were providing was being used for the purchase of the stock of TLC Pattern and that Crowthers Pattern was receiving nothing in return for its repayment of the bridge loans.

Under § 272 of the New York Debtor and Creditor Law, fair consideration for conveyance of property or an obligation may be found only if "a fair equivalent therefor" is received by the transferor *and* such consideration is given by the transferee in good faith. If the transferor does not receive "a fair equivalent" for the conveyance, the transferee's good faith alone is insufficient to validate the transaction. If a conveyance is made without fair consideration, and the transferor will be left insolvent (§ 273), will be left with an unreasonably small capital (§ 274) or intends or believes that it will incur debts beyond its ability to pay as they mature (§ 275), it is fraudulent without regard to the actual intent of the transferor or the transferee.

Two recent decisions have applied fraudulent conveyance laws in relation to transactions similar to the one at hand.

In *Weiboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488 (N.D.Ill.1988), the court denied the defendants' motions to dismiss, explaining:

> The LBO reduced the assets available to Weiboldt's creditors. Weiboldt contends that, after the buy-out was complete, Weiboldt's debt had increased by millions of dollars, and the proceeds made available by the LBO lenders were paid out to Weiboldt's then existing shareholders and did not accrue to the benefit of the corporation. Weiboldt's alleged insolvency after the LBO left Weiboldt with insufficient unencumbered assets to sustain its business and ensure payment to its unsecured creditors.

94 B.R. at 493.

In holding that the complaint in *Weiboldt* alleged sufficient facts to state a claim against the LBO lenders, the court concluded that the various LBO transactions should be treated as one transaction:

[A] court should focus not on the formal structure of the transaction but the knowledge and intent of the parties involved in the transaction.

Applying this principle to defendants' assertions, it is clear that, at least as regards the liability of the controlling shareholders, the LBO transfers must be collapsed into one transaction. . . .

Weiboldt's complaint also alleges sufficient facts to implicate the LBO lenders in the scheme. [The lenders] were well aware of each other's loan or credit commitments to WSI [the acquiring corporation] and knew that WSI intended to use the proceeds of their financing commitments to purchase Weiboldt shares or options and to release certain Weiboldt assets from prior encumbrances.

94 B.R. at 502–03.

Accordingly, the court concluded that "the LBO lenders ... are direct transferees of Weiboldt property" and that "[a]lthough WSI participated in effecting the transactions, ... WSI served mainly as a conduit." 94 Bankr. at 503.

In *United States v. Gleneagles Invest. Co.*, 565 F.Supp. 556 (M.D.Pa.1983), *aff'd in part sub nom., United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3d Cir.1986), *cert. denied sub nom., McClellan Realty Co. v. United States*, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987), the Court of Appeals for the Third Circuit agreed that the district court properly collapsed the stages of the LBO in that case in order to determine fraudulent conveyance liability, stating that the district court properly "looked beyond the exchange of funds between [the lender] and the [debtors]" because "[t]he two exchanges were part of one integrated transaction." 803 F.2d at 1302.

As in those cases, the loans, stock purchases and repayments at issue here were part of one integrated transaction, the ultimate result of which was to impose additional debt of $35 million on Crowthers Pattern, for which Crowthers Pattern received nothing in exchange. Bankers Trust argues that it cannot be held liable for fraudulent conveyance because the complaint merely alleges that it made loans to GJS One, the purchaser of TLC Pattern stock, and that the loan was repaid. However, GJS One served essentially as a conduit for the transfer of the loan proceeds to the TLC Pattern shareholders. Crowthers Pattern, the entity that resulted from the merger of GJS One and TLC Pattern and assumed responsibility for repayment of the loan, did not receive the substantive benefits of the loan. Rather, the loan was earmarked for uses that did not benefit the corporation.

▮ Under these circumstances, it would be inappropriate for the court in determining the rights of creditors of the corporation to turn a blind eye to the fact that the loan proceeds were merely passed through the corporation to the shareholders. *See United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3d Cir.1986) (3d Cir.1986) (endorsing approach of looking beyond exchange of funds between lender and corporate borrowers). In evaluating the applicability of fraudulent conveyance laws designed to protect creditors' rights, it is essential to view the transaction or transactions in question from the perspective of creditors. A leveraged buy out (i.e., the sale of a corporation in which at least part of the purchase price is obtained through debt assumed by the corporation) such as the one at issue here can harm creditors in exactly the way fraudulent conveyance laws are designed to prevent. Accordingly, under the fraudulent conveyance laws, a lender is required to make a reasonable determination that the buy out is consistent with the rights of creditors before advancing funds. Where, as here, it is alleged that the lenders knew that Crowthers Pattern would not receive the loan proceeds but would nevertheless assume responsibility for repaying the debt, and it is alleged that the eventual insolvency and bankruptcy of Crowthers Pattern was a foreseeable result of the leveraged buy out, the plaintiff has adequately pleaded a cause of action for fraudulent conveyance and Bankers Trust's motion to dismiss Counts I through III is denied.

### C. *Motions to Dismiss Count IV Under Rule 9*

■ Bankers Trust and the Shearson entities assert that Count IV should be dismissed because it does not meet the particularity requirements of F.R.Civ.P. 9(b).

The plaintiff counters that it need only plead and prove the fraudulent intent of the transferor; good faith and fair consideration on the part of each of the transferees is an affirmative defense which Bankers Trust and the Shearson entities must plead and prove.

Case law supports Crowthers Pattern's position that it is the intent of the transferor and not the intent of the transferee that is relevant to liability under § 276. As Justice Cardozo observed,

> If the grantor made the conveyance with fraudulent intent, the burden was on the grantee to show that he had accepted it for value, in which event the [creditors] mights have to prove that he had notice of the fraud.

*Brody v. Pecoraro*, 250 N.Y. 56, 61–62, 164 N.E. 741 (1928), cited in *United States v. Orozco-Prada*, 636 F.Supp. 1537, 1541 (S.D.N.Y.1986). Thus, the intent of the Shearson entities and Bankers Trust is relevant only as an affirmative defense and the allegations of the complaint are sufficient as they stand. Accordingly, the motions to dismiss Count IV under Rule 9 are denied.

### II. Motion to Dismiss Count V

■ Count V alleges that the directors were enriched by the Crowthers LBO in breach of their fiduciary duty and that Bankers Trust and the Shearson entities knew that the directors' approval of and participation in the Crowthers LBO was a breach of their fiduciary duty and that Bankers Trust and the Shearson entities participated in the alleged misconduct. The individual defendants have not moved to dismiss Count V.

Bankers Trust and the Shearson entities assert that, as to them, Count V is essentially a claim for aiding and abetting a fraudulent conveyance and that there is no basis in law for such a claim against a party who is not a transferee.

Crowthers Pattern responds that Bankers Trust and the Shearson entities mischaracterize its claim under Count V as a claim for aiding and abetting a fraudulent conveyance when in fact it is a claim for aiding and abetting a breach of fiduciary duty. Crowthers Pattern alleges that Bankers Trust and the Shearson entities knew that the directors approval of the Crowthers LBO was a breach of fiduciary duty and aided and abetted that breach by providing bridge financing for the transaction.

■ Under New York law, three elements must be asserted to state a claim for aiding and abetting a breach of fiduciary duty: a) that the fiduciary's conduct was wrongful; b) that the defendant had knowledge that the fiduciary's wrongful conduct was occurring; and c) that the defendant's conduct gave substantial assistance or encouragement to the fiduciary's wrongful conduct. *See, e.g., Resnick v. Resnick*, 722 F.Supp. 27 (S.D.N.Y.1989) (claim that bank aided and abetted principal to breach his fiduciary duties owed to plaintiff withstood motion to dismiss); *Feinberg Testamentary Trust v. Carter*, 652 F.Supp. 1066, 1082 (S.D.N.Y.1987); *Seigal v. Merrick*, 422 F.Supp. 1213 (S.D.N.Y.1976).

The plaintiff asserts that the directors approval of and participation in the Crowthers LBO constituted a breach of fiduciary duty, that Bankers Trust and the Shearson entities knew of this breach, and that Bankers Trust and the Shearson entities substantially assisted the directors in their wrongful conduct by providing the bridge loans knowing that the proceeds were being used for the purchase of stock of TLC Pattern, as a result of which Crowthers Pattern received no fair consideration for its assumption of the bridge loan obligations. Accordingly, the complaint pleads the three elements of aiding and abetting a breach of fiduciary duty; the motions to dismiss Count V are denied.

### III. Count VI

■ Count VI alleges that the 1987 sale of TLC Pattern and certain related "Additional Payments" were unlawful dividends, stock purchases or stock redemptions in violation of 8 Del.C. § 160 and/or § 173 of the Delaware General Corporation Law and that the directors approval of and participation in the 1987 Sale and the Additional Payments constituted willful or negligent violations of § 160 and/or § 173. The "Additional Payments" were 1) the payment by TLC Pattern to third parties of fees and expenses in connection with attempts to sell or recapitalize TLC Pattern; 2) the payment by TLC Pattern to TLC Group of a note held as part of the purchase price for warrants of TLC Pattern stock; 3) the payment by TLC Pattern to TLC Group for certain management and other services; and 4) the payment by TLC Pattern of attorney's fees. The plaintiff claims that it is entitled to recover the amount of the unlawful dividends, stock purchases or stock redemptions from the directors who authorized them.

Section 160 of the controlling Delaware General Corporation Law provides in pertinent part:

(a) Every corporation may purchase, redeem, receive, take or otherwise acquire ... its own shares provided, however, that no corporation shall:

(1) Purchase or redeem its own shares of capital stock for cash or other property when the capital of the corporation is impaired or when such purchase or redemption would cause any impairment of the capital of the corporation ...

(2) Purchase, for more than the price at which they may then be redeemed, any of its shares which are redeemable at the option of the corporation.

Section 173 of the Delaware General Corporation Law provides in pertinent part:

No corporation shall pay dividends except in accordance with this chapter. Dividends may be paid in cash, in property, or in shares of the corporation's capital stock.

Section 174 of the Delaware General Corporation Law provides in pertinent part:

(a) In case of any willful or negligent violation of § 160 or 173 of this title, the directors under whose administration the same may happen shall be jointly and severally liable, at any time within 6 years after paying such unlawful dividends or after such unlawful stock purchase or redemption, to the corporation, and to its creditors in the event of its dissolution or insolvency, to the full amount of the dividend unlawfully paid, or to the full amount unlawfully paid for the purchase or redemption of the corporation's stock, with interest from the time such liability accrued.

The individual defendants argue that Count IV should be dismissed because the plaintiff's allegations fail to state a claim under the relevant sections of the Delaware General Corporation Law. They contend first that by its express language § 160 is limited to cases in which a corporation purchases its own stock from its own shareholders and does not apply where, as here, shareholders have sold their stock to a third party. The individual defendants argue that the plaintiff's claim is insufficient because the shareholders of TLC Pattern and TLC Group did not sell their stock to TLC Pattern or TLC Group but to GJS One. GJS One did not buy its own stock, but bought stock in TLC Pattern and TLC Group.

The individual defendants also maintain that TLC Pattern did not declare any dividend in violation of § 173. According to the individual defendants, a dividend is a distribution by a corporation to its shareholders of the earnings of the corporation. GJS One paid funds to the shareholders of TLC Pattern and TLC Group when it purchased their stock in 1987 and made no payments to its own shareholders in connection with the sale transaction. The individual defendants also maintain that no dividends were paid in connection with the "Additional Payments" which were payments made to third parties for management fees, legal expenses, loan discharge and marketing expenses.

The plaintiff asserts that when the various steps of the Crowthers LBO are col-

lapsed, the purchase of stock, which in substance was funded by the $35 million in additional debt assumed by Crowthers Pattern as a result of the LBO, properly can be viewed as a purchase or redemption by Crowthers Pattern, rather than GJS One, of the TLC Pattern and TLC Group stock. According to the plaintiff, this stock purchase, because it impaired Crowthers Pattern's capital or rendered it insolvent, violated the directors duties under Del.Gen. Corp.Law § 160.

Alternatively, the plaintiff argues that the payments received by the TLC Pattern and TLC Group shareholders for their stock can be characterized in substance as dividends or distributions made by TLC Pattern. The plaintiff again asserts that when the various steps of the Crowthers LBO are collapsed, it becomes clear that in large part these payments were funded by the $35 million additional debt assumed by Crowthers Pattern as a result of the LBO.

With regard to the individual defendants' claim that the Additional Payments were consideration for services rendered or payment of legitimate debts rather than distributions to shareholders, the plaintiff points out that the labels used by defendants are not controlling; rather, the court must determine the true nature of the payments.

Courts which have previously addressed the application of similar statutes to LBO transactions have rejected arguments which concentrate on the form of the transaction rather than its substantive economic effect. In *Weiboldt*, 94 B.R. at 488, the court, applying Illinois law, upheld the debtors' claim that its directors made an illegal distribution to shareholders in connection with a leveraged buy out "because the effect of the payment of cash from HCFS [the lender which financed the tender offer] to the shareholders was to transfer Weiboldt assets to Weiboldt shareholders." 94 B.R. at 511. *See also United States v. Gleneagles Invest. Co.*, 565 F.Supp. 556, 584–85 (M.D.Pa.1983).

Here, too, at least at this stage of the proceedings, dismissal of the claim for unlawful dividends, stock purchases or stock redemptions would be inappropriate. If the plaintiff's allegations are true, as must be assumed on these motions to dismiss, the economic substance of the transactions in question brings them within the purview of the relevant sections of the Delaware General Corporation Law. Accordingly, the motion to dismiss Count VI is denied.

## IV. Motion to Dismiss Count VII

Count VII alleges that certain payments made in connection with the Crowthers LBO constituted distributions to the shareholders and directors in violation of Section 5.09 of the Indenture relating to TLC Pattern's subordinated debentures; Section 5.09 prohibits distributions to TLC Pattern shareholders unless certain net worth and net income requirements are satisfied. The individual defendants argue that Count VII should be dismissed because the plaintiff has no standing to assert such a claim under the Indenture.

The plaintiff asserts standing under Bankruptcy Code § 544(b) which gives a bankruptcy trustee or debtor-in-possession the power to avoid transfers made by the debtor that are voidable under applicable nonbankruptcy law by any unsecured creditor holding an allowable unsecured claim. The individual defendants argue that this action represents an improper attempt by plaintiff to benefit the debenture-holders, not the estate in general and therefore, must be dismissed pursuant to the holding of the United States Supreme Court in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972).

The plaintiff responds that the defendants' reliance on *Caplin* is misplaced. The plaintiff asserts that it is not seeking to recover money for the debentureholders, but rather to set aside voidable transfers that were made to the shareholders and directors and to return the amounts transferred to the debtor's estate.

Since the recovery is sought for the benefit of the estate, all unsecured creditors will share in the recovery, not merely the debentureholders and *Caplin* does not apply. Accordingly, defendants' objection to

this claim is without merit and the motion to dismiss is denied.

## V. Motion to Dismiss Count X

■■■ Count X alleges that defendant Lewis is liable for plaintiff's debts because he exercised complete domination and control over TLC Pattern and Crowthers Pattern, causing them to make transfers for his benefit in fraud of creditors and in violation of covenants in contracts intended for the protection of creditors. Lewis urges that the allegations are insufficient to justify piercing the corporate veil, which is a prerequisite to rendering Lewis liable.

In *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir.1979), the Court of Appeals for the Second Circuit described the circumstances under which a court may disregard the corporate form:

> Because New York courts disregard corporate form reluctantly, they do so only when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.

Here the complaint alleges a series of transactions involving Lewis and entities controlled by him which could support a finding that Lewis used TLC Pattern and Crowthers Pattern to enrich himself to the detriment of the corporations and their creditors. For example, the plaintiff alleges that Lewis caused TLC Pattern to engage in a purported "sale/leaseback" transaction, in which TLC Holdings (a wholly-owned subsidiary of TLC Group, which was owned by Lewis) purchased TLC Pattern's manufacturing facility for approximately one-third of its fair market value and then leased the facility to TLC Pattern, which agreed to pay over ten years at least twice the facility's fair market value. The complaint also alleges that Lewis caused TLC Pattern to pay more than $15 million for stock warrants that TLC Group had acquired for only $3.1 million, leaving TLC Pattern with a negative net worth and a capital account deficit. Finally, at the heart of the complaint is the claim that Lewis caused Crowthers Pattern to incur, without consideration, $35 million in debt in connection with the Crowthers LBO. Although Crowthers Pattern received nothing in that transaction, Lewis received $52 million directly and an additional $3 million through TLC Holdings.

These allegations paint a portrait of a corporation that was dominated by Lewis and during the relevant time period transacted business in a way that favored Lewis' interests rather than its own. They are sufficient, and the motion to dismiss Count X is denied accordingly.

## VI. Rule 19

■■■ The defendants assert that Hermann, Travelers and Crowthers Holdings are necessary parties to the case and must be joined as defendants pursuant to Rule 19.[4] They argue: 1) the three are transferees of the allegedly fraudulent conveyance which the suit seeks to set aside; 2) the three have an interest in defending their rights as challenged in the complaint because a determination that conveyances at issue were fraudulent could be asserted for its precedential effect in a subsequent litigation against them; 3) Hermann's status as a former director of TLC Pattern mandates his joinder as a defendant; and 4) failure to join the three will invite further litigation over the same subject matter now before the court.

The plaintiff answers that in order to set aside the fraudulent conveyances as to those parties named as defendants in the

---

**4.** Fed.R.Civ.P. 19(a) provides in relevant part:
A person ... shall be joined as a party in the action if ... (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest.

complaint, it is not necessary to set aside conveyances made to other persons in connection with the same transaction. Therefore, the plaintiff argues, this court could determine that, for example, Lewis must return the proceeds of his sale of his TLC Pattern stock without any determination that Hermann must return the proceeds of the sale of his TLC Pattern stock.

The plaintiff disputes the defendants' argument that the rights of Hermann, Crowthers Holdings and Travelers might be affected by the outcome of this litigation. The plaintiff maintains that the defendants' assertion that the decision here might have a precedential impact on the absent persons is based on speculation. Only Crowthers Pattern can assert fraudulent conveyance claims against the absent parties and Crowthers Pattern has not done so.

Moreover, in the plaintiff's view, Hermann is not a necessary party to an action for breach of fiduciary duty against the other directors. Defendants' argument is premised on the notion that Hermann, as a joint tortfeasor with the other directors, breached a fiduciary duty. The plaintiff asserts that it need not seek recovery from every director for the torts committed by all directors. Moreover, according to the plaintiff, the rights of those directors who are parties to this action are not affected by the failure to join Hermann.

Applying the criteria of Rule 19 to this case, the defendants have not established that Hermann, Travelers or Crowthers Holdings are necessary parties to this action. Should the defendants be found liable under any of the theories advanced in the complaint, the absence of the three would not prevent complete relief from being accorded those already parties. Each transferee's liability under the fraudulent conveyance claims is limited to the amount it wrongfully received. With regard to the other claims, joint tortfeasors are not necessary parties since their liability is both joint and several. *In re Johns–Mansville Corp.*, 26 B.R. 405 (Bankr.S.D.N.Y.1983), *aff'd*, 40 B.R. 219 (S.D.N.Y.1984). A tortfeasor, if found liable, can seek contribution from a joint tortfeasor. *Merchants Bank of New York v. Credit Suisse Bank*, 585 F.Supp. 304 (S.D.N.Y.1984); *Stratton Group, Ltd. v. Sprayregen*, 466 F.Supp. 1180 (S.D.N.Y.1979). Accordingly, no rights of current defendants are prejudiced by failure to join Travelers, Hermann and Crowthers Holdings and the motions to join them or dismiss the complaint are denied.

In sum, the motions to dismiss Counts I through IV as to Shearson Lehman Brothers Group Inc., Shearson Lehman/American Express Inc., Shearson TLC Inc. and Shearson Lehman Brothers Capital Partners I are granted. The motions to dismiss Counts I through VII and Count X as to the other defendants and the motion to join are denied.

It is so ordered.