**In re ANTON MOTORS, INC., Debtor.**

**Scott D. FIELD, Trustee, Plaintiff,**

v.

**MONTGOMERY COUNTY, MD., Defendant.**

**Bankruptcy No. 90–4–4262–SD. Adv. No. 94–1265–SD.**

United States Bankruptcy Court, D. Maryland.

Jan. 11, 1995.

---

Jeffrey L. Tarkenton, Erik D. Bolog, David & Hagner, P.C., Washington, DC, for debtor.

David J. Frankel, Associate County Atty., Rockville, MD, for defendant.

*MEMORANDUM OF OPINION DENY-ING IN PART, AND GRANTING IN PART, MOTION TO DISMISS*

E. STEPHEN DERBY, Bankruptcy Judge.

Scott D. Field, Trustee and Plaintiff ("Trustee") filed this Complaint against Montgomery County, Maryland ("County") to recover as fraudulent conveyances several real property tax payments made by Anton Motors, Inc. ("Debtor") during the three year period prior to the filing of Debtor's bankruptcy petition on December 13, 1990. The Trustee alleges that the taxes paid were the personal obligations of Anton Schmidt ("Schmidt"), who was the Debtor's President at the time the payments were made. It is undisputed that these payments by Debtor were for taxes on real property that was then owned by Schmidt.

Count I is brought under 11 U.S.C. §§ 548(a)(2) and 550 to recover at least $11,-157.11 that was paid within one year before the date of filing the bankruptcy petition. Count II seeks to recover as a fraudulent conveyance under Md.Com.Law Code Ann. § 15–204 (Repl.Vol.1990) and 11 U.S.C. §§ 544(b) and 550 at least $83,733.04 paid to the County within three years before the filing of the petition, without fair consideration and when the Debtor was insolvent. Count II includes the amount sought to be recovered under Count I.

The County has moved to dismiss on four grounds. First, the County alleges that the Trustee failed to join necessary parties, namely, the current property owners,· who acquired the properties after foreclosure, and Schmidt, as the property owner on the date of finality for the tax years for which the property taxes were paid. Second, the County asserts it has not waived its common law immunity from suits to obtain tax refunds, and it asserts that immunity from this suit. Third, as to Count II, the County alleges the Trustee has failed to make essential allegations required under Maryland fraudulent conveyance law. Finally, the County asserts that the Trustee did not commence this action within the two year period allowed after the appointment of a trustee under 11 U.S.C. § 546(a)(1).

The court will address in reverse order the grounds asserted by the County in support of its motion to dismiss.

### A.

The two year limitations period in 11 U.S.C. § 546(a)(1) is not a bar to this action. The subject complaint was filed on March 9, 1994, within two years after the Trustee was appointed in this case on July 8, 1992. In *In re Maxway Corp.*, 27 F.3d 980, 984 (4th Cir.1994) the court held that the two year statute of limitations in § 546(a)(1) " ... does not begin to run until the 'appointment' of one of the trustees specified in Section 546(a)(1)," i.e. from the appointment of the Chapter 7 Trustee under 11 U.S.C. § 702.

The court in *Maxway* also concluded "that the statute of limitations contained in Section 546(a)(1) does not begin to run upon the 'appointment' of a debtor-in-possession...." *Id.* The Fourth Circuit in *Maxway* recognized that other courts of appeals had not reached the same result. However, the holding of *Maxway* is binding on this court, and the County's motion to dismiss the complaint as barred by the applicable statute of limitations is denied.

### B.

The County's argument that the Trustee has failed to make essential allegations in Count II is based upon the language of § 15-204 of the Maryland Commercial Law Code, which provides:

> Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

Md.Com.Law Code Ann. § 15-204. The County argues that the Trustee has failed to allege that the Debtor "is or will be rendered insolvent by" the conveyance sought to be avoided. Instead, the Trustee has alleged that "[t]he Debtor was insolvent on the date of the transfer." Complaint, ¶ 10.

The County's argument is based upon a technical reading of § 15-204 that would lead to an absurd result. The argument is that the words "by it" appear immediately after the word "insolvent". Therefore, the technically correct reading of the two alternatives in the sentence is "by a person who is ... insolvent by it" and "by a person who ... will be rendered insolvent by it." This reading would exclude from a recoverable fraudulent conveyance a transfer by a person who was already insolvent at the time the transfer was made.

It is an absurd result to find that a fraudulent transfer is only recoverable if it makes a person insolvent, but a person already insolvent is free to make fraudulent conveyances to the detriment of creditors. The County's reading of this statute would also make the two alternative statuses of the transferor redundant.

Under Maryland law, if a statute contains plain language that, read literally, produces an absurd result inconsistent with the purpose of the statute, a court is not compelled to read the language literally. *E.g., Miller v. Western Electric Co.*, 310 Md. 173, 528 A.2d 486 (1987). Further, if reasonably possible a statute should be read so that no word, clause, or phrase is rendered surplusage or superfluous. *E.g., Police Comm'r of Balto. City v. Dowling*, 281 Md. 412, 419, 379 A.2d 1007 (1977), and cases cited therein; *Board of Education v. Lendo*, 295 Md. 55, 62-63, 453 A.2d 1185 (1982).

The natural meaning of § 15-204 that responds to the evil it was intended to address is that a conveyance is fraudulent as to creditors if it is made by a person who is insolvent or who will be rendered insolvent by it. Because the Trustee has made an allegation that the Debtor was insolvent, the essential allegation has been made; and the County's motion to dismiss Count II on this ground will be denied.

### C.

The defense of sovereign immunity raised by the County requires separate analysis for Count I and for Count II. The Trustee asserts, in response to the County's claim of sovereign immunity, that Section 113 of the Bankruptcy Reform Act of 1994, totally eliminates the immunity defense in this adversary proceeding. Pub.L. 103-394, 108 Stat. 4106 (103d Cong., 2d Sess.1994) [H.R. 5116]. Section 113 rewrote 11 U.S.C. § 106 to read as follows, in its entirety:

> **§ 106. Waiver of sovereign immunity**
>
> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is *abrogated* as to a governmental unit to the extent set forth in this section with respect to the following:
>
> (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, *544*, 545, 546, 547, *548*, 549, *550*, *551*, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143,

1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action *not otherwise existing* under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case *is deemed to have waived sovereign immunity with respect to a claim* against such governmental unit that is property of the estate and *that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.*

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, *there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.*

(Emphasis supplied).

■ As rewritten, Section 106(a) abrogates, not just waives, the sovereign immunity of a governmental unit. This abrogation specifically includes all substantive sections of the Bankruptcy Code. The significance of abrogation, excluding constitutional issues that are not raised here, is that it constitutes a total override of Eleventh Amendment immunity and federal sovereign immunity, to the extent that Congress has made its intent unmistakably clear. *See In re 995 Fifth Ave. Assoc., L.P.,* 963 F.2d 503, 506–09 (2nd Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 395, 121 L.Ed.2d 302 (1992). "Abrogation of Eleventh Amendment immunity typically occurs when Congress enacts a new federal statutory cause of action." *Id.* at 507.

■ Waiver, in contrast, is triggered by some activity of a state or federal governmental entity by which it consents to be sued in a federal court. *Id.* A relevant example is where a governmental unit files a claim in a bankruptcy case. By filing a claim in a bankruptcy case, a governmental unit waives sovereign immunity as to a counterclaim by the bankruptcy estate that arises out of the *same* transaction or occurrence. 11 U.S.C. § 106(b) (eff. 10/22/94) (former § 106(a) contained similar language). A waiver, by its nature, is thus limited in scope. *E.g., Hoffman v. Connecticut Dept. of Income Maintenance,* 492 U.S. 96, 101–02, 109 S.Ct. 2818, 2822–23, 106 L.Ed.2d 76 (1989) (a bankruptcy court could not enter a money judgment against a state that had not filed a proof of claim); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181, 191 (1992) (old § 106(c) did not waive the sovereign immunity of the United States for an action seeking a monetary recovery in bankruptcy because there was not "an unequivocal textual waiver").

The standard for abrogation of a state's Eleventh Amendment immunity that the Supreme Court found unsatisfied in *Hoffman* was that Congress had not made its intention to authorize a monetary recovery from a state that had not filed a claim " 'unmistakably clear in the language of the statute.' " *Hoffman,* 492 U.S. at 101, 102, 109 S.Ct. at 2822, 2823. The unsatisfied standard in *Nordic Village* for waiver of sovereign immunity from monetary relief against the United States [Internal Revenue Service] was that

the waiver was not "'unequivocally expressed'" in the statutory text. *Nordic Village,* 503 U.S. at 32–34, 38–40, 112 S.Ct. at 1014, 1017, 117 L.Ed.2d at 187, 191.

The principle that sovereign immunity may be waived by a governmental unit that has filed a proof of claim as to a counterclaim arising from the same transaction or occurrence is retained in § 113 of the Bankruptcy Reform Act of 1994 as new 11 U.S.C. § 106(b). However, the waiver principles are supplemented with the broader abrogation provisions of new § 106(a).

New 11 U.S.C. § 106(a) added by § 113 of the Reform Act effectively overrules the two Supreme Court cases that had limited and denied the waiver of sovereign immunity, namely, *Hoffman* and *Nordic Village.* See the House Judiciary Committee, Bankruptcy Reform Act of 1994—Section–By–Section Description, Cong.Rec. H 10764, 10766 (103d Cong., 2d Sess., Oct. 4, 1994). In new § 106(a) Congress has stated unequivocally its intention to abrogate sovereign immunity from bankruptcy causes of action for both the United States and the states, as to both nonmonetary and monetary judgments, except punitive damages. As explained in the House Judiciary Committee's Section–By–Section Description,

> This amendment expressly provides for a waiver of sovereign immunity by governmental units with respect to monetary recoveries as well as declaratory and injunctive relief. It is the Committee's intent to make section 106 conform to the Congressional intent of the Bankruptcy Reform Act of 1978 waiving the sovereign immunity of the States and the Federal Government in this regard. Of course the entire Bankruptcy Code is applicable to governmental units where sovereign immunity is not or cannot be asserted. As suggested by the Supreme Court, section 106(a)(1) specifically lists those sections of title 11 with respect to which sovereign immunity is abrogated. This allows the assertion of bankruptcy causes of action, but specifically excludes causes of action belonging to

> the debtor that become property of the estate under section 541. The bankruptcy and appellate courts will have jurisdiction to apply the specified sections to any kind of governmental unit as provided in section 106(a)(2). The bankruptcy court may issue any kind of legal or equitable order, process, or judgment against a governmental unit authorized by these sections or the rules, but may not enter an award for punitive damages. Furthermore, in awarding fees or costs under the Bankruptcy Code or under the Bankruptcy Rules, the award is subject to the hourly rate limitations contained in section 2412(d)(2)(a), title 28, United States Code, and these limitations are applicable to all governmental units, not just the Federal Government.

*Id.* at H 10766.[1]

It appears from the quoted passage of the Committee's Section–By–Section Description that Congress had intended a comprehensive waiver of sovereign immunity for states and the federal government when it originally enacted the Bankruptcy Code in 1978. Accord, Remarks of Rep. Howard Berman, Cong.Rec. H 10772 (Oct. 4, 1994). Viewing the amendments to 11 U.S.C. § 106 as merely confirming and clarifying the original intent of Congress would explain why § 113 was one of the few sections of the Reform Act that was made effective for pending cases.

The abrogation provisions of new § 106(a) are applicable to this adversary proceeding, although both this bankruptcy case and adversary proceeding were commenced before its enactment. The date of enactment of the Bankruptcy Reform Act of 1994 is the date it was signed by the President, i.e. October 22, 1994. U.S. Const., Art. I, § 7, cl. 2; *Gardner v. Collector,* 73 U.S. (6 Wall) 499, 18 L.Ed. 890 (1868). Section 702(b)(2)(B) of the Reform Act explicitly makes the amendments in § 113 to 11 U.S.C. § 106 applicable in cases commenced before the date of the Reform Act's enactment. It provides:

---

1. H.Rept. 103–83 as printed omits the language after the first two sentences of the quoted passage and some unquoted material. The court does not consider these omissions at variance with the court's conclusions.

(B) The amendments made by sections 113 and 117 shall apply with respect to cases commenced under title 11 of the United States Code *before,* on, and after the date of the enactment of this Act.

(Emphasis supplied).

### Count I.

■ Sections 548 and 550 of the Bankruptcy Code create a cause of action by the trustee for a bankruptcy estate for a monetary recovery on account of an avoidable, fraudulent conveyance. Because new § 106(a) is applicable and expressly abrogates the defense of sovereign immunity by governmental units with respect to §§ 548 and 550 actions, defendant Montgomery County's motion to dismiss Count I as barred by sovereign immunity will be denied. There is no dispute that Montgomery County is a governmental unit, as that term is defined in 11 U.S.C. § 101(27).

### Count II.

■ Count II requires a separate analysis of sovereign immunity because it is brought pursuant to 11 U.S.C. § 544. Although § 544 is among the sections enumerated in new § 106(a) as to which sovereign immunity is abrogated, § 544 does not itself create a substantive cause of action. Rather, it merely allows a trustee in certain circumstances to assume causes of action under a state's law. Here, the Trustee is asserting a claim under Maryland's Uniform Fraudulent Conveyance Act. Md.Com.Law Code Ann., § 15–204; see generally §§ 15–201—15–214.

Section 544(b) of the Bankruptcy Code provides, in part, that "[t]he trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim...." Therefore, it is necessary to consider whether under Maryland law an unsecured creditor of the Debtor could have avoided as a fraudulent conveyance Debtor's tax payments to Montgomery County for Schmidt's property. The court concludes that an unsecured creditor of the Debtor could not have brought this action under Maryland law. New § 106(a)(5) expressly affirms that nothing in the section waiving sovereign immunity "... shall create any substantive ... cause of action not otherwise existing under this title, ... or nonbankruptcy law." Pub.L. 103–394 at § 113. Consequently, the County's motion to dismiss will be granted as to Count II.

By statute Maryland has modified its common law immunity for counties. *E.g.,* Md. Cts. & Jud.Pro.Code Ann., §§ 5–401—5–404 (1994 Supp.) (the Local Government Tort Claims Act); Md.Tax–Prop.Code Ann. §§ 14–905, 14–911—14–917 (1994 Repl.Vol., 1994 Supp.) (refunds of county property taxes); Md.Ann.Code, Art. 25A, § 1A (1957, 1994 Repl.Vol.) (sovereign immunity waived for charter counties, such as Montgomery County, in contract actions). Among the express powers of Montgomery County is the power to levy and collect uniform taxes on land and improvements. Md.Ann.Code, Art. 25A, at § 5(O). See Md.Const.Code Ann., Decl. of Rts., Art. 15 (1981 Repl.Vol.). The Trustee is seeking to have paid back to him real property taxes that were paid to Montgomery County, because they were paid in violation of the rights of Debtor's creditors. In substance, the Debtor's Trustee is seeking a refund of Debtor's property taxes. Consequently, it is necessary to consider Maryland law that is specifically applicable to the refund of tax payments.

■ There is a longstanding and often repeated doctrine in Maryland that no action lies for refund of a tax paid by mistake of law, except as specifically provided by the General Assembly as a matter of legislative grace. *E.g., Apostol v. Anne Arundel County,* 288 Md. 667, 421 A.2d 582 (1980). The Court of Appeals in *Apostol,* which involved a challenge that Anne Arundel County's property tax rate differential for the City of Annapolis was too low, summarized the principles of this doctrine as follows:

It is firmly established in this State that once a taxpayer voluntarily pays a tax or other governmental charge, under a mistake of law or under what he regards as an illegal imposition, no common law action lies for the recovery of the tax absent a special statutory provision sanctioning a refund. This is true even if payment is made under protest. Moreover, in these

circumstances, no common law or declaratory judgment action lies to challenge the validity of a tax so paid. Where there is a special statutory provision sanctioning a refund, although no particular statutory remedy is provided, an action in assumpsit is available. However, where there is statutory authorization for a refund and a special statutory remedy set forth, that remedy is exclusive. These principles have recently been reviewed at length in *Baltimore County v. Xerox Corp.*, 286 Md. 220, 406 A.2d 917 (1979); *White v. Prince George's Co.*, 282 Md. 641, 650–54, 387 A.2d 260 (1978); and *Rapley v. Montgomery County*, 261 Md. 98, 274 A.2d 124 (1971).

Furthermore, the rule that no action lies to challenge the validity of a tax paid under a mistake of law, except for any refund sanction specifically provided by the Legislature, has been applied consistently by this Court, regardless of the nature of the legal attack mounted or the type of mistake of law claimed. *See, e.g., White v. Prince George's Co., supra*, 282 Md. at 646, 654 (tax claimed to be unconstitutionally retroactive); *Rapley v. Montgomery County, supra*, 261 Md. at 110 [274 A.2d 124] (tax claimed to be arbitrary and discriminatory, violative of the Maryland Constitution, and invalidly adopted); *Wasena Housing Corp. v. Levay*, 188 Md. 383, 392, 52 A.2d 903 (1947) (tax attacked on the ground that the procedure used to assess property was improper); [additional citations omitted].... The cases make it clear that actions to challenge taxes paid under mistakes of law "are matters of grace with the Legislature." *Wasena Housing Corp. v. Levay, supra*, 188 Md. at 389 [52 A.2d 903].

If there had been no statutory provisions specifically dealing with refunds of county property taxes paid under a mistake of law, the plaintiffs may have been able to maintain an action for declaratory and injunctive relief from June 1, 1978, until the time when they paid the challenged taxes. Nevertheless, it is clear that the payment of the taxes during the pen-

dency of the court proceedings terminated their right to continue.
288 Md. at 672–73, 421 A.2d 582.

More recent cases affirming these principles include: *Nordheimer v. Montgomery County*, 307 Md. 85, 96–98, 512 A.2d 379 (1986) (there was no cause of action by transferor or transferees' association against Montgomery County for a refund of, or a declaratory judgment as to, condominium transfer taxes that had been paid); *Potomac Elec. Power Co. v. Prince George's County*, 298 Md. 185, 189–91, 468 A.2d 325 (1983) (principle that payment of the disputed tax extinguishes the cause of action disputing the tax applied even where the county undertook not to spend the money); *State v. Burning Tree Club, Inc.*, 315 Md. 254, 262, n. 4, 554 A.2d 366 (1989), *cert. denied sub nom. Burning Tree Club, Inc. v. Maryland*, 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989) (challenge by members of all male country club to statute prohibiting sex based discriminating membership policies by country clubs receiving favorable property tax treatment could continue because club had not paid the full taxes demanded); *Wash. Sub. San. Comm'n v. C.I. Mitchell & Best Co.*, 303 Md. 544, 572–78, 495 A.2d 30 (1985).

■ Maryland has provided a statutory remedy to obtain refunds of county property taxes paid by mistake. Md.Tax–Prop.Code Ann., §§ 14–905, 14–914 through 14–917. Since a refund remedy has been provided by the Maryland General Assembly, the statutory remedy is exclusive. The exclusive remedy for recovering county property taxes under Maryland law does not include a fraudulent conveyance action option. Further, the statutory refund procedure was not utilized by the Trustee.

The Trustee argues that the *Apostol* line of case authority is not applicable because Debtor was not the obligated taxpayer seeking a refund, but rather a third party seeking to enforce rights to recover fraudulent conveyances under the Maryland Commercial Law Code. The focus of the Trustee's argument is too narrow. The issue is whether the legislature intended to supplant the common law doctrine that no action lies for recovery of a tax that has been paid. There is

no statutory language to suggest that the General Assembly intended to supplant this doctrine when it enacted the fraudulent conveyance provisions. Further, the common law doctrine has been applied broadly "... regardless of the nature of the legal attack mounted or the type of mistake law claimed." *Apostol*, 288 Md. at 672, 421 A.2d 582. Although the case law has involved claims raised by those obligated to pay the taxes in the first instance, the fact that a third party volunteer seeks the refund is not a distinction with substantive significance. The doctrine does not depend on who is the claimant, but rather on what is the relief sought from a governmental entity.

The Maryland statutory refund provisions for county property taxes do not refer to taxpayers. Rather they refer to "a person" who submits a refund claim. Md.Tax–Prop. Code Ann. §§ 14–905, 14–914, 14–915. The grounds for a refund claim are stated broadly. A refund may be claimed for a county property tax that was "erroneously or mistakenly paid", and the amount to be refunded is the amount that exceeds what is "properly and legally chargeable to or collectible from the person." *Id.* at § 14–905(a). In addition, Section 14–905(d) specifically provides that in Carroll County a person who erroneously pays the property tax of another may apply for a refund. The court interprets this section as expository of the general refund remedy, and not as limiting it.

■ The Trustee presents the additional counter argument that the County waived its immunity when it filed a proof of claim in this case. As enacted in the Bankruptcy Reform Act of 1994, new 11 U.S.C. § 106(b) waives sovereign immunity for the County only "... with respect to a claim against [the County] ... that arose out of the same transaction or occurrence out of which the claim of [the County] arose." Pub.L. 103–394 at § 113, *supra.* New § 106(b) does not alter the substance of former § 106(a) in this respect, so the County cannot assert that its action in filing a proof of claim was not a knowing action.

The County's proof of claim, nevertheless, is for 1990 delinquent personal property taxes assessed against the Debtor on account of Debtor's personal property. The Trustee has asserted a claim against the County for three years of real property taxes paid on account of real property that the Debtor did not own. The Trustee's claims, therefore, do not arise out of the same transaction or occurrence as the County's claim. The type of taxes are different; two of the tax years are different; the owners of the taxed property are different; and the legal and factual bases of the claims are different.

■ The scope of a governmental unit's waiver is narrow. As stated in *995 Fifth Ave. Assoc.,* "[t]he scope of the waiver, of course, remains limited; upon filing a claim the governmental unit subjects itself only to claims that arose from the same transaction or occurrence that formed the basis of the governmental unit's claim." 963 F.2d at 507–08. In *995 Fifth Ave. Assoc.,* the debtor sought refund of a gains tax paid on the sale of the debtor's interest in a hotel, as to which the court found New York had waived sovereign immunity by filing an administrative claim for additional gains tax liability on the sale. Both New York's claim and the debtor's suit involved the same tax and the same transaction or occurrence. *Id.* at 509.

This court disagrees with cases such as *In re Cook United, Inc.,* 117 B.R. 301 (Bankr. N.D.Ohio 1990), cited by the Trustee, insofar as they conclude that a governmental unit waives immunity as to all claims by a debtor's estate when it files a proof of claim in a bankruptcy case because the bankruptcy filing is the common occurrence. *Id.* at 306. *Cook United* was decided before *U.S. v. Nordic Village,* and a broad interpretation of waiver is inconsistent with the reasoning in *Nordic Village* that stressed "... the traditional principle that the Government's consent to be sued 'must be "construed strictly in favor of the sovereign" [citation omitted] and not "enlarge[d] ... beyond what the language requires," '...." 503 U.S. at 32–36, 112 S.Ct. at 1014–15, 117 L.Ed.2d at 188. Accord, *Hoffman,* 492 U.S. 96, 109 S.Ct. 2818; *In re Pace Enterprises of Columbia, Inc.,* 171 B.R. 444, 447 (Bankr.D.D.C.1994).

For these reasons, there has been neither a waiver nor an abrogation of the County's

immunity from a state law fraudulent conveyance action to recover real property taxes. Count II must thus be dismissed.

### D.

■ The County's contention that the Trustee has failed to join as necessary parties Schmidt and the present owners, after foreclosure, of the subject property is not persuasive. F.R.C.P. 19(a), made applicable by Bankruptcy Rule 7019, requires certain persons to be joined in an adversary proceeding if feasible. A person must be joined as a party if "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." F.R.C.P. 19(a).

Section 548(a) of the Bankruptcy Code authorizes the trustee to avoid a fraudulent transfer of an interest of a debtor in property. 11 U.S.C. § 548(a). Section 550(a)(1) permits the trustee, to the extent that a transfer is avoided under § 548, to recover the property transferred or the value of such property from either the initial transferee or the entity for whose benefit the transfer was made. *Id.* at § 550(a)(1). In the instant adversary proceeding, the Trustee has elected to press his claim against the transferee, Montgomery County, and not against the person for whose benefit the property tax payments were made, namely, Schmidt. The trustee did not have an option of attempting to recover the fraudulent conveyance from the current property owners because they are not immediate or mediate transferees of the tax payment from Montgomery County. 11 U.S.C. § 550(a)(2).

In *Crowthers McCall Pattern, Inc. v. Lewis*, 129 B.R. 992 (S.D.N.Y.1991) the creditors' committee on behalf of a Chapter 11 debtor brought a fraudulent conveyance action challenging a leveraged buyout transaction that preceded the debtor's bankruptcy. The action was against persons and entities that were former stockholders of the debtor's predecessors in interest, lenders into the buyout transaction that had been paid off with the proceeds of notes issued by the debtor, and former directors. Omitted as defendants were two former stockholders and the holder of the debtor's notes. The district court rejected defendant's motion under F.R.C.P. 19 to compel the joinder of the three potential defendants, and it refused to dismiss for failure to join them. The court reasoned that the absence of the three potential defendants would not prevent complete relief being accorded those who were already parties, since each transferee's liability under the fraudulent conveyance claims was limited to the amount wrongfully received. Further, with respect to the joint tortfeasor counts against directors, the court concluded that joint tortfeasors are not necessary parties since the liability of each is both joint and several. If a joint tortfeasor is found liable, that joint tortfeasor could seek contribution from the others. Consequently, rights of the named defendants were not prejudiced by the failure to join the three potential defendants. *Id.* at 1002–03.

Similarly, in *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488 (N.D.Ill.1988) a Chapter 11 debtor sued its controlling shareholders, noninsider shareholders tendering more than 1,000 shares, officers, directors, and lenders in a leveraged buyout alleging fraudulent conveyances and breach of fiduciary duties. Certain defendants moved to dismiss for plaintiff's failure to join parties necessary for a just adjudication under F.R.C.P. 19. The missing parties were noninsider shareholders who had tendered fewer than 1,000 shares and the purchaser and related entities. The F.R.C.P. 19 motion to dismiss was denied because neither the absent shareholders nor the purchasing parties were necessary parties to a just adjudication of the pending dispute. Further, the absence of the purchasing parties did not create a possibility that the defendants would incur inconsistent obligations because the missing purchasing parties could not obtain, in a subsequent lawsuit, the relief that the Chapter 11 debtor

**68**

prayed in its complaint from the existing defendants. The court noted that only a trustee in bankruptcy or a debtor-in-possession could request relief under the fraudulent conveyance provisions of § 548 of the Bankruptcy Code. *Id.* at 512.

Applying the F.R.C.P. 19(a) tests to the subject complaint, first, complete relief can be accorded on the Trustee's fraudulent conveyance complaint as between the Trustee and Montgomery County without the presence of Schmidt or the present owners of the property. Section 550(a) of the Bankruptcy Code expressly recognizes that the Trustee may seek recovery from either the initial transferee or the entity for whose benefit the transfer was made. Second, whatever claims Montgomery County may have against former and present owners of the subject property or against the property itself require separate consideration of facts and legal principles of liability that would not be ruled on in the action to recover a fraudulent conveyance. Therefore, the ability of present and former owners of the property to protect their interests will not be impaired by this fraudulent conveyance action. Third, the present and former owners are not at risk of incurring multiple or inconsistent obligations by virtue of their interests, because only the Trustee can bring an action under 11 U.S.C. §§ 548 and 550. Further, 11 U.S.C. § 550(c) (now § 550(d)) expressly limits the Trustee's recovery to a single satisfaction.

For the reasons set forth in this opinion, a separate order will be entered that (a) denies the County's motion to dismiss Count I brought under 11 U.S.C. § 548, and (b) grants defendant's motion to dismiss Count II brought under 11 U.S.C. § 544 and Md. Com.Law Code Ann., § 15–204.