**In re ABATEMENT ENVIRON-
MENTAL RESOURCES,
INC., Debtor.**

**United States of America, Appellant,**

v.

**Scott D. Field, Trustee, Appellee.**

**Civ. No. AMD 02–4033.**

United States District Court,
D. Maryland.

May 27, 2003.

---

## MEMORANDUM

DAVIS, District Judge.

This is an appeal by the United States from an adverse summary judgment entered by the bankruptcy court. Specifically, the bankruptcy court held that appellee, the chapter 7 trustee, was entitled to recover from the government, as avoidable "fraudulent conveyances," payments by the debtor to the Internal Revenue Service ("IRS") out of debtor's funds, to cover the tax liability of one of the debtor's officers. The issues have been fully briefed and oral argument is unnecessary. I shall reverse the judgment of the bankruptcy court because the very state's law on which the trustee relies for his claim, Maryland, pro-

vides a defense to the claim on which the United States is entitled rely in respect to the substance of the trustee's claim, namely, a claim for a refund of taxes paid.

### I.

The parties filed cross-motions for summary judgment, readily agreeing that there was no dispute of material fact. The debtor is Abatement Environmental Resources, Inc. ("debtor"). Initially, debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. Subsequently, on March 6, 2000, the bankruptcy court converted the case to a chapter 7 proceeding.

Joseph Downey ("Downey") is the owner and principal officer of the debtor; he is a fugitive. The present dispute arises out of Downey's use of corporate funds on three occasions to pay his individual tax liabilities. First, on or about April 15, 1997, Downey filed a request for extension of time to file his personal 1996 Income Tax Return and enclosed debtor's check no. 3244, dated April 5, 1997, in the amount of $82,000. In November 1997, Downey reported a tax liability of $208,543 and claimed withholding taxes paid in the amount of $137,995 in his 1996 Federal Income Tax Return. Consequently, Downey had a surplus of $11,452, of which the IRS transferred $7,700 to another government agency to satisfy child support payment obligations, and credited the balance of $3,752 toward Downey's 1997 tax liability.

Next, on or about January 17, 1998, Downey filed an estimated tax declaration with the IRS for the 1997 tax year, and enclosed debtor's check no. 3534, dated January 10, 1998, in the amount of $65,000. In April 1998, Downey filed a request for extension of time to file his 1997 Income Tax Return and enclosed debtor's check no. 2414, dated April 16, 1998, also in the amount of $65,000. The IRS negotiated

these instruments. On or about February 15, 1999, Downey reported a tax liability of $164,171 and claimed withholding credits of $81,737 on his 1997 Federal Income Tax Return. Consequently, Downey's overpayments to the IRS totaled $51,318, which was credited to his 1998 tax liability.

Finally, in April 1999, Downey filed a request for extension of time to file his 1998 Income Tax Return, and paid with it $30,000. In November 1999, Downey reported *no* tax liability and withholding credits of $84,976 on his 1998 Federal Income Tax Return. Consequently, on November 29, 1999, the IRS paid to Downey $166,294, which consisted of the $51,318 in overpayments from Downey's 1996 and 1997 tax returns, and $114,976 in overpayments and tax credits as to Downey's 1998 tax return.

The trustee timely filed the underlying adversary proceeding, alleging that the IRS is a beneficiary of fraudulent transfers from the debtor on behalf of Downey. The bankruptcy court granted the trustee's motion for summary judgment and denied the motion filed by the United States, which noted a timely appeal.

## II.

■ Section 158 of Title 28 of the United States Code authorizes United States district courts to act as appellate tribunals for final orders from bankruptcy courts. On appeal, district courts review bankruptcy courts' factual findings for clear error, and their conclusions of law under the *de novo* standard. *Kielisch v. Educ. Credit Mgmt. Corp.*, 258 F.3d 315,

319 (4th Cir.2001); *In re Deutchman*, 192 F.3d 457, 459 (4th Cir.1999). The district court reviews a bankruptcy court's grant of summary judgment *de novo*. *Hager v. Gibson*, 109 F.3d 201, 207 (4th Cir.1997) (citing *In re Ballard*, 65 F.3d 367, 370 (4th Cir.1995)).

## III.

■ The trustee concedes that his potential *federal* claim under 11 U.S.C. § 548(a)(1) to avoid the debtor's payments on behalf of Downey is barred by the one year period of limitations applicable under that section. Thus, the trustee relies on section 544(b)(1) of the Bankruptcy Code, which provides that a "trustee may avoid any transfer of an interest of the debtor ... that is voidable under applicable law by a creditor holding an unsecured claim." The "applicable law" in this case is the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"). MUFCA provides as follows, in pertinent part: "Every conveyance made ... by a person who is or will be rendered insolvent by it is fraudulent as to creditors ..., if the conveyance is made ... without a fair consideration." Md.Code Ann., Com. Law II § 15–204 (2000 Repl.Vol.).[1] The United States argues, *inter alia*, that, as the trustee's claim arises under the law of Maryland, the claim is barred by an immunity to which governmental units with taxing authority are entitled under Maryland law, citing *Apostol v. Anne Arundel County, Maryland*, 288 Md. 667, 421 A.2d 582 (1980), and *In re Anton Motors, Inc.*, 177 B.R. 58 (Bankr.D.Md.1995). I agree.[2]

---

**1.** The Supreme Court has noted that "fraudulent conveyance actions by bankruptcy trustees ... constitute no part of the proceedings in bankruptcy but concern controversies arising out of it." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (quotation marks omitted).

Such claims "are quintessentially suits at common law" that "resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate." *Id.*

**2.** The parties have insisted upon the use of the term "sovereign immunity" to describe the defense asserted by the United States in this

In *Apostol*, prior to the enactment of an ordinance establishing the Anne Arundel county tax rates for fiscal year 1979, 13 property owners in the City of Annapolis (including the mayor and members of the city council) brought a class action against the county, the county council, and the county executive. *Apostol*, 288 Md. at 670, 421 A.2d at 584. The plaintiffs alleged that, "unless restrained, the defendants 'will undertake' to set the fiscal 1979 tax rates in a manner violating Art. 81 § 12G–8 of the Maryland Code," relating to certain provisions covering property located within incorporated municipalities within a county. *Id.* As relief, plaintiffs sought, among other things, refunds of any property taxes that might be paid pursuant to the allegedly illegal levy. *Id.* After suit was filed, the defendants enacted the challenged ordinance (on June 1, 1978), and sometime during the pendency of the case, the plaintiffs paid their property taxes in accordance with the challenged rates set forth in that ordinance. *Id.* at 671, 421 A.2d 582.

Although the trial court denied relief on other grounds, the Court of Appeals affirmed on the sole ground that "[i]t is firmly established in this State that once a taxpayer voluntarily pays a tax or other governmental charge, under a mistake of law or under what he regards as an illegal imposition, no common law action lies for the recovery of the tax absent a special statutory provision sanctioning a refund." *Id.* at 672, 421 A.2d 582. Thus, the Court of Appeals remanded the case with directions that plaintiffs' claims be dismissed, finding that the payment of the challenged tax extinguished the plaintiffs' cause of action in its entirety. *Id.* at 676, 421 A.2d 582.[3]

Bankruptcy Judge E. Stephen Derby applied *Apostol* in *In re Anton Motors, Inc.*, in an adversary proceeding bearing significant similarities to this case. He dismissed, in part, the trustee's attempt to avoid real property taxes paid to Montgomery County, Maryland, by the debtor in that case in respect to property owned by a corporate officer of the debtor. *In re Anton Motors, Inc.*, 177 B.R. at 64. Specifically, as in the instant case, the bankruptcy trustee relied (in part) on 11 U.S.C. § 544(b) as a vehicle to avoid payments under the MUFCA that were made by the debtor corporation to satisfy real property tax obligations owed by the president of the debtor at the time the payments were made. *Id.* at 60.

The trustee sought to distinguish *Apostol* on the ground that the debtor was not an obligated taxpayer seeking a refund (as was true in *Apostol*), but was a "third

---

case. As discussed in text, the issue is not so much the existence *vel non* of traditional sovereign immunity and the scope of Congress' abrogation of sovereign immunity as to certain claims under the Bankruptcy Code, but rather, is a question of whether Maryland's special solicitude for taxing authorities is trumped by its fraudulent conveyance statute. I conclude that the answer is "no."

**3.** In its description of the "voluntary payment doctrine" in *Apostol*, the Maryland Court of Appeals has left little doubt that a payment by a corporation, at the insistence of one of its principals, of the principal's tax liability, is encompassed by the term "voluntary pay-

ment." *See Apostol*, 288 Md. at 670, 421 A.2d at 584 ("[T]he rule that no action lies to challenge the validity of a tax paid under mistake of law ... has been applied consistently by this Court, regardless of the nature of the legal attack mounted or the type of mistake of law claimed."). Furthermore, in rejecting the attempt by plaintiffs to analogize to cases excusing a failure to exhaust administrative remedies, the Court noted that "none of those cases involved or discussed the situation presented here, namely a challenge to government taxes or charges after all of the plaintiffs had paid the demanded taxes or charges." *Id.* at 674–75, 421 A.2d 582.

party seeking to enforce rights to recover fraudulent conveyances under the Maryland Commercial Law Code." *Id.* at 65. Judge Derby rejected this argument, finding that there was no "statutory language to suggest that the General Assembly intended to supplant [the voluntary payment] doctrine when it enacted the fraudulent conveyance provisions." *Id.* at 66. Judge Derby reasoned that the abrogation by Congress of state sovereign immunity in 11 U.S.C. § 106 (as to federal causes of action such as that set forth in 11 U.S.C. §§ 548, 550) did not vitiate Montgomery County's state law defense to a *tax refund suit,* which he found was, "[i]n substance," exactly what the trustee sought by virtue of its fraudulent transfer claim under Maryland law. *Id.* at 64.

Despite an obvious factual difference (this case involves a federal tax rather than a state tax), I find that the decision in *In re Anton Motors, Inc.* is persuasive here. There is a dearth of evidence and no identified rationale to suggest that the General Assembly intended the MUFCA to be used as an exception to the "voluntary payment" doctrine. The General Assembly has enacted numerous statutes that explicitly state specific circumstances under which a claimant is eligible to receive a refund for taxes paid to governmental entities. *See, e.g.,* Md.Code Ann., Tax–Gen. § 13–901 (1997 Repl. Vol) (allowing a claimant to file for a refund of the payment of various State taxes, alcoholic beverage taxes, income taxes, estate taxes, motor carrier taxes, motor fuel taxes, sales and use taxes, and tobacco taxes); Md. Code Ann., Tax–Prop. § 14–905 (2001

Repl.Vol.) (stating that a claimant is eligible for a refund of overpayment of taxes to a county or municipal corporation); Md. Code Ann., Transp. II § 13–817 (2002 Repl.Vol.) (allowing a claimant to obtain a refund for overpayment of excise taxes); Md.Code Ann., art. 29 § 6–111 (2002) (allowing a claimant to file for a refund of overpayment of fees to the Washington Suburban Sanitary Commission). The General Assembly uses specific language when enacting statutes to allow claimants to seek refunds for taxes erroneously paid.[4] The language of the MUFCA, however, is not remotely consistent with the language used in these tax refund statutes. Instead, the language of the MUFCA illustrates that the General Assembly merely intended to codify the common law rule prohibiting insolvent entities from making transfers without fair consideration, *see generally Lacey v. Van Royen,* 259 Md. 80, 92, 267 A.2d 91, 97 (1970) ("The Uniform Act is declaratory of the common law . . . ."), as opposed to creating (or intending to create) a statutory exception to the voluntary payment doctrine, a special defense at law and in equity to governmental units with the authority to levy and collect taxes. *Apostol,* 288 Md. at 672, 421 A.2d at 585("[I]n these circumstances, no common law or declaratory judgment action lies to challenge the validity of a tax so paid"). Of course, the Maryland General Assembly is without power to authorize a refund of federal taxes, but the point here is simply to observe that where it has power to treat a payment of taxes as a fraudulent conveyance (and thereby vitiate

---

4. Every statute that allows a claimant to seek a refund of taxes paid contains specific language such as, "a claim for a refund may be filed," "a person who submits a written refund claim . . . is eligible for a refund" or other similar language. *See, e.g.,* Md.Code Ann., Tax–Gen. § 13–901 (1997 Repl. Vol);

Md.Code Ann., Tax–Prop. § 14–905 (2001 Repl.Vol.); *Id.* § 14–905(d); *Id.* §§ 14–906, 14–907, 14–908; Md.Code Ann., art. 24 § 9–710 (2002); Md.Code Ann., Transp. II § 13–817 (2002 Repl.Vol.); Md.Code Ann., art. 29 § 6–111 (2002).

the voluntary payment doctrine), it has not elected to exercise that power.[5]

The trustee argues that *In re Anton Motors, Inc.* is distinguishable from the instant case, and that, like the court below, I should adopt the reasoning of the court in *In re C.F. Foods, L.P.*, 265 B.R. 71 (Bankr.E.D.Pa.2001), which declined to apply the reasoning of *In re Anton Motors, Inc.* to afford a defense to the United States under the Pennsylvania fraudulent conveyance statute. In *C.F. Foods*, the court rejected the United States' "sovereign immunity" argument based on, *inter alia*, its view that the "unambiguous" abrogation of sovereign immunity set forth in 11 U.S.C. § 106(a) applied equally to

claims based directly on 11 U.S.C. § 548(a)(1), as well as to claims asserted under state law pursuant to 11 U.S.C. § 544(b). I am not persuaded to follow *In re C.F. Foods's* application of *Pennsylvania* law, however, as the fraudulent conveyance claim in the instant case arises under *Maryland* law.[6]

## IV.

The trustee steps into the shoes of an ordinary unsecured creditor under 11 U.S.C. § 544(b) in asserting his claim under the MUFCA. I can discern no basis for permitting a MUFCA claim against a governmental authority, the substance of which is a tax refund action, to proceed, in

5. *See Halle Development, Inc. v. Anne Arundel County*, 371 Md. 312, 324 n. 17, 808 A.2d 1280, 1287 n. 17 (2002) ("We note that regardless of what label petitioners attempt to give to the fees given to respondent, be it 'tax' or 'fee,' or a 'governmental charge,' under the facts of this case petitioners cannot recover due to the applicability of the voluntary payment doctrine.").

6. In *In re C.F. Foods, L.P.*, the court deemed the issue to be whether the IRS could assert sovereign immunity against a 11 U.S.C. § 544 claim in the face of 11 U.S.C. § 106(a) which states that "sovereign immunity is abrogated as to a governmental unit ... with respect to... [section] 544." The court concluded that "[b]y including § 544 in the list of Bankruptcy Code sections set forth in § 106(a), Congress knowingly included state law causes of action within the category of suits to which a sovereign immunity defense could no longer be asserted." *Id.* at 85. Accordingly, the court held that the unambiguous language and legislative history of § 106 precluded the United States from successfully invoking sovereign immunity as a defense. *Id.* at 86.

The issue in the instant case, however, presents a different question. Namely, the question is "whether under Maryland law an unsecured creditor of the Debtor could have avoided as a fraudulent conveyance Debtor's tax payments ...." *In re Anton Motors, Inc.*, 177 B.R. at 64. The case at bar requires a

determination of whether *Maryland law* recognizes a defense to a claim to avoid a "fraudulent payment" of taxes; the issue is not whether a *federal law* of immunity applies under these circumstances.

The trustee also asserts that *In re Anton Motors, Inc.* should not be applied here because *In re Anton Motors, Inc.* involved a state governmental unit. Although the court in *In re C.F. Foods, L.P.*, noted this distinction, it is of no moment, as the defense being recognized is a state law defense to a tax refund claim asserted against a taxing authority, not a defense available only to a state governmental unit. No Maryland case suggests that this protection should be analyzed differently for a local, state, or federal governmental unit. Indeed, the Court of Appeals broadly states that no common law action lies for "any tax or other governmental charge," and does employ any limiting language. *Apostol*, 288 Md. at 672, 421 A.2d 582. It would be more than mildly anomalous, to say the least, if a *state taxing authority* could take advantage of the defense but the *IRS* (and other *federal entities with the authority to collect taxes and other "governmental charges"*) could not.

Finally, the trustee's reliance on "policy reasons favoring recovery for the benefit of all creditors," simply misses the point that it is state law which gives him the right to sue, *see* 11 U.S.C. § 544(b)(1), and it is state law that provides the defense being recognized here. *Cf. supra*, n. 1.

the face of the long-settled "voluntary payment" doctrine under Maryland law, which severely restricts the availability of remedies for erroneously paid taxes. Accordingly, I am constrained to the view that the bankruptcy court erred in granting summary judgment in favor of the appellee. The judgment shall be reversed.[7] An order follows.[8]

## ORDER

For the reasons stated in the foregoing Memorandum, it is this 27th day of May, 2003, ORDERED

(1) That the judgment of the bankruptcy court is REVERSED; and it is further ORDERED

(2) That the Clerk shall CLOSE THIS CASE and TRANSMIT a copy of this Order and the foregoing Memorandum to all counsel and interested parties and to the Clerk of the United States Bankruptcy Court for this district.

---

**7.** In view of my conclusion as to the non-maintainability of an action against the United States for a tax refund under the MUFCA, I need not and do not address the other issues generated on appeal, e.g., whether the IRS, on the one hand, or Downey, on the other hand, was the initial transferee of the transfers from the debtor, and whether there was "fair consideration" for the transfers.

**8.** Of course, I express no view as to whether the trustee might bring a refund action under *United States v. Williams*, 514 U.S. 527, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995). It bears mention, however, in that it appears debtor was Downey's alter ego, as it were, the rule of *Williams*, affording standing to one other than the taxpayer to sue for a refund of taxes, could possibly be adapted to this case.